**Maurice MASON, Petitioner,**

v.

**Betty MITCHELL, Warden, Respondent.**

No. 1:99 CV 524.

United States District Court, N.D. Ohio, Western Division.

Oct. 15, 2003.

821

David C. Stebbins, Esq., Carol A. Wright, Esq., Columbus, OH, Patricia A. Snyder, Esq., Cleveland, OH, for Petitioner.

Jonathan R. Fulkerson, Esq., Matthew C. Hellman, Esq., Henry G. Appel, Esq., Stuart A. Cole, Esq., Matthew J. Lampke, Esq., Office of the Attorney General, Columbus, OH, for Respondent.

## MEMORANDUM OPINION AND ORDER

KATZ, District Judge.

### I. Introduction

This case is before the Court on remand from the Sixth Circuit. In its Mandate Order, the Sixth Circuit held that it could not determine from the record whether Petitioner's trial counsel were ineffective for failing to investigate and present evidence during the mitigation phase of trial. Consequently, the Sixth Circuit remanded the case for this Court to hold an evidentiary hearing on this claim. *Mason v. Mitchell,* 320 F.3d 604 (6th Cir.2003). Both parties desire to conduct discovery in advance of the hearing. The Court conducted a status conference on July 10, 2003. Thereafter, the Court ordered Petitioner to file a motion on two contested issues that arose during the conference, and for Respondent to file a more definitive motion for records deposition requests.

In response to that Order, the Petitioner has filed a Memorandum Regarding the Scope and Availability of Depositions, (Doc No. 126), to which Respondent filed Opposition. (Doc. No. 128.) Additionally, Respondent filed a Motion to Conduct Records Depositions and Motion In Limine to Exclude the Testimony of James Crates at the Evidentiary Hearing. (Doc. Nos. 129, 130). Petitioner opposed both Motions. (Doc. No. 133, 134.)

Finally, on October 10, 2003, the Petitioner and trial counsel, Ted Coulter, filed Motions to Quash Respondent's Subpoena (Doc. Nos. 137, 139). Because the issues the Petitioner and trial counsel raise in these Motions were substantially similar to those raised in the Memorandum Regarding the Scope and Availability of Depositions, the Court issues its opinion on these Motions without requiring additional briefing from the Respondent.

### II. Scope and Availability of Depositions

#### A. Deposition of Maurice Mason

In its July 11, 2003, Order, the Court granted counsel for Petitioner until October 13, 2003, to decide which witnesses counsel will call at the evidentiary hearing. Petitioner's counsel indicated that they are considering the Petitioner as a potential witness but wish to limit the scope of Respondent's questioning of the Petitioner at his deposition. Specifically, Petitioner's counsel assert that the attorney-client privilege restricts Respondent from asking the Petitioner about conversations he had with trial counsel regarding his involvement in the rape and murder of Robin Dennis.

Respondent counters that the Petitioner has waived the attorney-client privilege by

raising trial counsel's conduct as an issue in this proceeding. Furthermore, Respondent asserts, the Petitioner put his criminal involvement at issue in this litigation by contending that trial counsel should not have utilized a residual doubt strategy during mitigation and by asserting that trial counsel did not properly prepare him to give an unsworn statement to the jury. Finally, Respondent alleges that because this is a civil case, the discovery should be broad. If the Petitioner later wishes to limit the admissibility of his deposition statements to Respondent's counsel, she asserts, he should do so by means of a motion in limine or a post-hearing brief.

■ The attorney-client privilege is one of the oldest recognized privileges. "The privilege is intended to encourage 'full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998)(quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). Although the privilege typically is the client's to assert or waive, courts have recognized that a client implicitly waives the attorney-client privilege by putting the attorney's performance at issue during subsequent litigation. *Hunt v. Blackburn,* 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488 (1888); *Bittaker v. Woodford,* 331 F.3d 715, 718–20 (9th Cir. 2003).

In those types of cases, the court imposes an implied waiver of the privilege to the extent necessary to litigate the claim. *Bittaker,* 331 F.3d at 720.

■ In determining the extent of the implied waiver in a habeas context, a court must balance the competing interests of the federal courts to fully litigate the habeas claim before it with the state's interests in maintaining the integrity of the state-

created attorney-client privilege. *Id.* at 721. Although the Sixth Circuit has yet to issue an opinion squarely addressing this issue, the Ninth Circuit recently found that the waiver in habeas cases should be limited to the extent necessary to litigate a petitioner's ineffective assistance of counsel claims. *Bittaker,* 331 F.3d at 722. It reasoned that, "[i]f the federal courts were to require habeas petitioners to give up the privilege categorically and for all purposes, attorneys representing criminal defendants in state court would have to worry constantly about whether their case files and client conversations would someday fall into the hands of the prosecution." *Id.* Thus, that court held, a habeas court should limit its waiver to the extent necessary for the state to defend the ineffective assistance claim. *Id.*

■ The Court finds that the Petitioner has implicitly waived his attorney-client privilege by asserting ineffective assistance of counsel during the mitigation phase of trial. The more difficult issue presented to the Court, however, is the *extent* to which the Petitioner has waived this privilege. At issue in this litigation is whether trial counsel adequately investigated and presented mitigating evidence during the penalty phase. Respondent asserts that because trial counsel presented a residual doubt defense during the mitigation phase, she should now be permitted to question the Petitioner about what he told his trial counsel regarding his involvement in the crime.

The Court rejects this contention. First, the residual doubt theory trial counsel presented during trial is not relevant to Respondent's need to question Petitioner regarding inculpatory statements he made to his trial counsel. Rather than arguing that the content of the residual doubt theory was inadequate, the Petitioner here is asserting that counsel should have discarded that strategy in favor of a mitigation

presentation that would have revealed the Petitioner's troubled childhood. Thus, the residual doubt theory is not at issue here. Its connection between the Petitioner's ineffective assistance claims and the need to disclose possibly inculpatory privileged information is tenuous at best.

■ Resolving Respondent's second allegation, that she is entitled to question the Petitioner about possible inculpatory statements because the Petitioner asserted that counsel failed to prepare him for his unsworn statement, however, is less clear. During the mitigation phase of trial, the Petitioner took the stand, asserting several times that he was innocent. (Trial Tr. 4279–80.) In his post-conviction petition, the Petitioner supplied an affidavit to support his ineffective assistance of counsel claim. (Doc. Doc. 126, Exhibit A.) In that affidavit, the Petitioner charged ineffective assistance for counsel's failure to prepare him for the unsworn statement as follows:

Neither of my counsel explained to me the purpose of the unsworn statement or even that I would have to make an unsworn statement until the morning of the sentencing hearing when they told me that I would have to make an unsworn statement. They gave me no guidance as to what I should say on my own behalf in my unsworn statement. Since I was also unaware what they were planning to present in the way of evidence at that penalty phase hearing, I could not prepare to make this unsworn statement.

On the morning of the penalty phase [of] trial, Mr. Coulter came to jail and told me that I could mak[e] an unsworn statement to the jury. I asked what that was, and he said that I could tell the jury anything I wanted to tell them at that time. Mr. Coulter never ex-

plained to me what I was supposed to tell them, or what the purpose of me talking to them was;

*Id.* at ¶¶ 8–9. Because the Petitioner has put counsel's preparation for the unsworn statement at issue here, the Court holds that the Petitioner has waived the attorney-client privilege as to any conversations that took place regarding counsel's preparation for, or explanation of, the unsworn statement. If the Petitioner discussed his criminal culpability during those conversations, the Court finds that the Petitioner is barred from asserting the privilege to prevent the Respondent from learning of these conversations. The Respondent will not, however, be permitted to broadly question the Petitioner regarding attorney-client conversations in which he discussed his criminal involvement.

In addition to the limited implied waiver determined as above, the Court also finds (and the Petitioner does not dispute) that the Petitioner has waived the attorney-client privilege regarding any and all conversations he had with counsel regarding the investigation of his background, preparation for and explanation of the mitigation phase of trial, and any conversations in which the Petitioner instructed counsel about what he wanted admitted or withheld from evidence during the mitigation phase.

### B. Dr. Spare Deposition

■ During the July 10, 2003, status conference, counsel for the Petitioner asserted that any inculpatory statements he made to Dr. Spare would not be relevant to the habeas proceeding. The Petitioner now contends that the work product doctrine should prohibit or limit the Respondent's questioning of Dr. Spare during his deposition.[1] The Petitioner claims that,

---

1. The Court acknowledges that witnesses who will not be called to testify during the hearing are not subject to deposition. Thus, the Court makes the above finding bearing in mind that it may become moot should the Petitioner

because Dr. Spare examined the Petitioner at the request of trial counsel, he is essentially an agent of trial counsel and his testimony is subject to the same privilege restrictions. Respondent argues that the work product privilege does not apply to Dr. Spare. To the extent it does apply, Respondent asserts, the Petitioner has waived it because he now alleges his counsel were ineffective for relying on Dr. Spare.

First recognized by the United States Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the work product doctrine was meant to promote justice and protect a client's interests by preventing opposing counsel unrestricted access to an attorney's correspondence, briefs, mental impressions and other documents. *United States v. Nobles,* 422 U.S. 225, 237, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Because it is often necessary for attorneys to rely on investigators or other agents to accumulate materials in preparation of trial, "[i]t is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* at 238–39, 95 S.Ct. 2160. Like the attorney-client privilege, the work product doctrine may be waived. Absent waiver, however, an opposing party may not obtain " 'opinion' work product of his adversary; *i.e.,* any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories." *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation,* 293 F.3d 289, 294 (6th Cir.2002)(internal quotation marks and citations omitted).

■ The Petitioner has claimed that counsel were ineffective for relying on Dr. Spare when conducting their investigation. Thus, the Court holds that the Petitioner has implicitly waived the work product

decide not to call Dr. Spare during the hearing.

privilege regarding Dr. Spare's investigation into the Petitioner's background and psychiatric conclusions about his condition. The Petitioner has not, however, waived the work product privilege as to inculpatory statements the Petitioner may have made to Dr. Spare. Moreover, the Court finds that statements made by the Petitioner to Dr. Spare regarding his involvement in the crime are not relevant to the issues in litigation here. Instead, as the Petitioner notes, the Respondent must limit her questioning of Dr. Spare to: 1) whether trial counsel asked him to independently investigate mitigating evidence and the Petitioner's background; 2) what independent investigation he actually conducted; 3) to what extent Dr. Spare communicated his findings to trial counsel; 4) any recommendations he made to counsel regarding the necessity of further investigation; and, 5) discussions trial counsel had with Dr. Spare concerning their decision to present or withhold mitigating evidence during the penalty phase of trial.

### III. Motion to Exclude the Testimony of James Crates

Respondent moves the Court to exclude the testimony of James Crates, the investigator post-conviction counsel hired in asserting ineffective assistance of counsel. Crates interviewed Ruby Mason, the Petitioner's now-deceased mother, before she died. The Petitioner wishes Crates to testify about the content of that conversation. Respondent asserts that Crates's testimony is inadmissible hearsay. The Petitioner objects to the Respondent's assertion on three grounds: (1) Federal Rule of Evidence 807 should permit Crates's testimony at the hearing; (2) the Sixth Circuit relied on Crates's affidavit in preparing its opinion; and, (3) the Respondent has waived the right to object to his testimony

during the hearing because she did not previously object to the use of the Crates affidavit. Each argument is addressed individually below.

## A. Federal Rule of Evidence 807

 Federal Rule of Evidence 1101(e) states, *inter alia,* that the Federal Rules of Evidence apply to cases arising under 28 U.S.C. § 2254. Fed.R. Evid. 1101(e); *Loliscio v. Goord,* 263 F.3d 178, 186 (2d Cir.2001). Thus, to permit Crates to testify, the Court must find that his testimony is either not hearsay, or subject to a hearsay exception. The exception on which the Petitioner relies is Federal Rule of Evidence 807. That rule, also known as the residual exception to the hearsay rule, states in pertinent part:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed.R.Evid. 807. As the Tenth Circuit has noted, "the essence of Rule 807 is . . . that the rule should be used only in 'extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice.'" *United States v. Harrison,* 296 F.3d 994, 1004 (10th Cir.2002)(quoting *United States v. Farley,* 992 F.2d 1122, 1126 (10th Cir.1993) and referring to Rule 803(24), the predecessor to Rule 807)(other citations omitted).

 To establish that testimony exhibits a guarantee of trustworthiness, a court should look not to corroborating testimony but to the circumstances surrounding the testimony itself. *United States v. Castelan,* 219 F.3d 690, 695 (7th Cir.2000)(citing *Lilly v. Virginia,* 527 U.S. 116, 138, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999)). Thus, "if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." *Idaho v. Wright,* 497 U.S. 805, 820, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

Based on the above law, it does not appear that the Petitioner can use Rule 807 to admit Crates's testimony. First, while Ruby Mason's statements certainly pertain to a material fact in this proceeding—the troubled childhood that the Petitioner experienced—they do not appear to be more "probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." Rather than offer this hearsay statement, the Petitioner or his siblings could offer the same or substantially similar testimony regarding the conditions of the Petitioner's childhood. Thus, in order to admit Crates's testimony, the Court will require, at the very least, that the Petitioner explain why he or other family members could not provide testimony regarding the Petitioner's childhood.

Additionally, it does not appear that the Petitioner has established a sufficient guarantee of trustworthiness for the Court to admit Crates's testimony during trial. As the Respondent notes, the conversation between Ruby Mason and Crates took place in preparation for filing the post-conviction petition. Thus, the Petitioner already had been convicted of capital murder and sentenced to death. The Petitioner's mother certainly had an incentive to emphasize negative aspects of his child-

hood. Moreover, Crates, as a defense investigator, was hired for the sole purpose of obtaining mitigating evidence. Therefore, his focus on the interview with Ruby Mason would have been to glean whatever mitigating evidence possible from it. Consequently, the Court finds that, at least at this juncture of the proceedings, the Petitioner has not established an adequate guarantee of trustworthiness to permit him to use Crates's testimony during the evidentiary hearing. While the import of Crates's testimony persuades the Court to give Petitioner's counsel another opportunity to demonstrate the statement's indicia of trustworthiness, as of yet it does not appear that the Petitioner has done so. Thus, the Court finds that the Petitioner is barred from using Rule 807 to admit Crates's testimony without demonstrating the applicability of the Rule as discussed above.

### B. Sixth Circuit's Reliance on Crates's Affidavit

The Petitioner also argues that because the Sixth Circuit relied on Crates's affidavit as grounds for remanding this case for an evidentiary hearing, it should be admissible during that hearing. The Sixth Circuit cited the Crates affidavit on several occasions in its opinion. Only two, however, relate to the conversation he had with Ruby Mason. First, in stating that trial counsel did not conduct a thorough investigation, the court noted the difficult conditions of the Petitioner's childhood. Citing the Crates affidavit as its source, it stated: "From the record before us, we have learned that Mason's alcoholic parents were heavy marijuana users and drug dealers from the time Mason was four or five years old. Indeed, Mason's mother admitted that for the majority of [Mason's] life the family home was a 'drug house.'" *Mason v. Mitchell*, 320 F.3d 604, 622 (6th Cir.2003). Second, it cited to Crates's affidavit to note that Ruby Mason told Crates that, although domestic abuse

regularly occurred, she did not report these incidents to police because such action was forbidden in the household. *Id.* at 623.

This argument lacks merit. While the Sixth Circuit certainly relied on the Crates affidavit in its opinion, its acceptance of the facts presented in that affidavit were only for purposes of underscoring the necessity of an evidentiary hearing, not to supplant the need for a hearing or to interfere with this Court's fact-finding function and the federal evidentiary rules. As the Sixth Circuit stated:

> Given defense counsel's understanding of the need for further investigation, we strongly believe that counsel may have afforded Mason ineffective assistance by unreasonably deciding not to investigate. We leave it to the district court in the first instance to determine after holding an evidentiary hearing whether the performance of defense counsel in this case failed to meet the constitutional minimum.

*Id.* at 623 n. 13. Thus, the Sixth Circuit recognized that, while the Crates affidavit in part provided the court with sufficient suspicion to remand for a hearing, this Court alone is initially responsible for finding the facts as established through the hearing. The Petitioner's argument asserting that this Court must admit the Crates affidavit because of the Sixth Circuit's reliance on it conflates the functions of this Court with the Sixth Circuit. Thus, the fact that the Sixth Circuit relied on the Crates affidavit is of no significance here.

### C. State's Failure to Object

Finally, the Petitioner asserts that because the Respondent failed to object to the affidavit at any juncture in state or federal litigation, she has waived the right to object to it here. The Court rejects such an argument. First, the Petitioner can point to no legal authority suggesting that the failure to object to a state-court

affidavit should preclude objection at a federal habeas evidentiary hearing. Moreover, while the affidavit is part of the current habeas record, Crates's testimony is not. Thus, the evidentiary hearing represents the first instance in which Crates will be testifying to the content of his conversation with Ruby Mason. Consequently, it is the first opportunity the Respondent has to object to such testimony as hearsay. The Court finds that the Respondent's failure to object to the affidavit previously is of no consequence here.

### D. Conclusion

Because of the importance of the Crates testimony, the Court will provide the Petitioner with another opportunity to demonstrate that it is admissible pursuant to Federal Rule of Evidence 807. Such motion and supporting memorandum shall be filed no later than fourteen (14) days from the date of this Order. Respondent shall have seven (7) days from the filing of the Petitioner's memorandum in which to file opposition.

### IV. Motion for Records Depositions

The Respondent moves the Court to permit records depositions of: (1) trial counsel; (2) James Crates: (3) habeas counsel; and, (4) the Petitioner's mental health experts Dr. James Spare and Dr. Jeffrey Smalldon. In its opinion remanding the case for a hearing, the Sixth Circuit referred to three thousand pages of documents furnished by the prosecution to trial counsel, but noted that none of those records were before that court. *Mason,* 320 F.3d at 621–22. Respondent now attempts to obtain at least a portion of the three thousand pages through its records deposition requests.

First, the Respondent wishes to obtain trial counsel's files. Although trial counsel Larry Winkfield has indicated that his files on the case were destroyed in a fire, co-counsel Tim Coulter may still possess his files on the case. The Respondent suggests that these files are valuable because they "typically provide a wealth of information regarding counsel's preparation and thought processes," such as their correspondence with family members, potential witnesses, and institutions in search of mitigating evidence. Motion at 3. The Petitioner asserts that any discovery of trial counsel's files should be limited to counsel's investigation and preparation for the penalty phase.

The Court grants the Respondent's request to review trial counsel's files; limited, however, to documents relating to the penalty phase of trial. As stated above, the Court has found that the Petitioner has not implicitly waived *all* aspects of the attorney-client privilege by asserting ineffective assistance of counsel during the mitigation phase of trial. By putting counsel's mitigation phase conduct at issue, however, the Respondent is entitled to review trial counsel's files for any documents that would demonstrate the nature or extent of their mitigation investigation. Thus, the Court grants the motion, limited to penalty-phase documents only.

The Respondent also wishes to conduct a records deposition of James Crates. Although Crates maintains that his files on the case were destroyed in a flood, the Respondent wishes to use her subpoena power to determine if some files were overlooked. While there is a remote possibility that this is the case, it appears unnecessary for the Respondent to conduct a records deposition for files that both parties acknowledge have been destroyed. Thus, the Court will deny this request.

The Respondent also requests the right to review the records of current habeas counsel for "historical documents" only. This review also appears unnecessary. Habeas counsel have indicated that they will provide the Respondent with the three thousand pages of documents, or portions

thereof, when and if they are located. Thus, there is no need for the Warden to review habeas counsel's files.

Finally, the Warden indicated she would like to conduct a records deposition of two mental health professionals who evaluated the Petitioner. First, the Respondent would like to obtain the records of Dr. James Spare, the mental health professional who defense counsel retained during trial. The Petitioner does not object to a records deposition of Dr. Spare with the proviso that the Court limit such a deposition to obtaining only those records that relate to Dr. Spare's communication with counsel and his independent investigation for mitigating evidence. The Petitioner objects to the release of any information regarding confidential conversations and/or information between Dr. Spare and the Petitioner. The Court finds the Petitioner's request for limitation reasonable. Thus, the Court grants the Respondent's request to conduct a records deposition of Dr. Spare only as it relates to Dr. Spare's contact with counsel and his search for mitigating evidence.

Second, the Respondent wishes to conduct a records deposition of Dr. Jeffrey Smalldon, the mental health expert hired during the state post-conviction proceedings. According to the Respondent, Dr. Smalldon reviewed Crates's files before they were destroyed. Crates also indicated that he was in constant contact with Dr. Smalldon. The Petitioner opposes this request, noting that if counsel for the Petitioner obtain any of Dr. Smalldon's records, counsel will provide these records to counsel for the Respondent. The Petitioner also has indicated that he may not call Dr. Smalldon as a witness during the hearing. If the Petitioner does not utilize Dr. Smalldon's testimony, then the Court will not, of course, permit the Respondent to conduct a records deposition of Dr. Smalldon's files. If the Petitioner chooses to call Dr. Smalldon as a witness, however, then the Court will permit the Respondent to conduct a records deposition of Dr. Smalldon, limited in the same capacity as Dr. Spare's records deposition.

## V. Motions to Quash

In the Motions to Quash Respondent's Subpoena, the Petitioner and trial counsel, Tim Coulter wish to limit the deposition questioning and document production of Coulter to issues relating to the mitigation phase of trial. As discussed above, the Court finds that the Petitioner has implicitly waived the attorney-client and work product privilege regarding any conversations with the Petitioner and/or documents counsel created in preparation for, or in investigation of, the mitigation phase of trial. If the Petitioner and counsel discussed his criminal culpability in preparation of the mitigation phase, the Court finds the Petitioner has waived his right to assert attorney-client privilege as to those conversations.

Similarly, if in the investigation or preparation for the mitigation phase of trial attorney Coulter acquired inculpatory information or produced documents in which the Petitioner's criminal liability was discussed, the Court finds that the Petitioner has waived the right to assert the work product privilege as to these documents by putting Coulter's conduct at issue in these proceedings. The Respondent may not, however, broadly question Coulter regarding conversations in which the Petitioner made inculpatory statements or obtain documents from Coulter's files relating to the culpability phase of trial.

## VI. Petitioner's Notice of Intent to Call Witnesses

Finally, on October 14, 2003, the Petitioner submitted a Notice of Intent to Call Witnesses (Doc. No. 140). Although this document contains a list of witnesses the Petitioner intends to call at the hearing, counsel for Petitioner also indicate that

they will "supplement" and "delete" witnesses to this list. To permit the Respondent ample opportunity to depose any witnesses prior to the hearing, however, the Court holds that the Petitioner must submit a final list of witnesses no later than October 17, 2003.[2] This additional time will permit counsel for Petitioner the opportunity to review this Order while not delaying the proceedings.

## VII. Conclusion

For the reasons stated above, the Court grants in part and denies in part the Petitioner's Memorandum Regarding the Scope and Availability of Depositions (Doc. No. 126). The Court will provide the Petitioner with another opportunity to demonstrate that the testimony of Crates's conversation with Ruby Mason is admissible pursuant to Federal Rule of Evidence 807 (Doc. 130). Such motion and supporting memorandum shall be filed no later than fourteen (14) days from the date of this Order. Respondent shall have seven (7) days from the filing of the Petitioner's memorandum in which to file opposition.

The Court grants in part and denies in part the Respondent's Motion for Records Deposition (Doc. No. 129). The Court grants in part and denies in part the Petitioner and Coulter's Motion to Quash Respondent's Subpoena (Doc. Nos. 137, 139).

The Petitioner shall have until October 17, 2003, to supplement or delete any witnesses from its list.

Finally, the Court confirms November 25 and 26, 2003, as the date set to hold the evidentiary hearing in this proceeding.

IT IS SO ORDERED.

2. This date supplants the October 13, 2003, date the Court set in its Order of July 11, 2003 (Doc. No. 121).