NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0537n.06
Filed: June 22, 2005

No. 05-3532

**UNITED STATES COURT OF APPEALS**

**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **In re: GREGORY LOTT,** | ) | |
| | ) | |
| **Appellant** | ) | |
| | ) | |
| | ) | **O R D E R** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE:**     **BOGGS, Chief Judge; MERRITT and COLE, Circuit Judges**

Gregory Lott has petitioned this Court for mandamus relief from an order that would require discovery of material that he claims is protected by the attorney-client and work product privileges. Lott was convicted and sentenced to death for the 1986 brutal murder of John McGrath in East Cleveland, Ohio. He is currently litigating his second habeas corpus proceeding in the Northern District of Ohio. *See In re Lott*, 366 F.3d 431, 434 (6th Cir. 2004) (authorizing Lott to file a second petition). In this petition, Lott claims that the prosecution withheld vital exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In order for Lott to bring this second petition, he must establish that but for this constitutional error, no reasonable fact finder would have found

him guilty of the murder. *See* 28 U.S.C. § 2244(b)(2)(B)(ii). The District Court has apparently

construed Lott's pleadings as presenting a claim of actual innocence of the underlying crime and has

found this actual innocence claim relevant to the habeas proceeding. As such, the District Court

determined that Lott injected his factual guilt or innocence of the murder into the proceedings.

Surprisingly, the District Court further ruled that through his assertion of innocence, Lott has

"implicitly waived the attorney-client and work product privileges to the extent necessary for the

Respondent to defend the actual innocence." Lott's Petition for Mandamus, Exhibit 1 (Judge

O'Malley's Discovery Order at 9-11). In accordance with this ruling, the court has authorized the

deposition of and production of documents from Lott's trial counsel. Specifically, the court ruled

that the warden could inquire into any statements Lott made to his counsel regarding his innocence

or guilt and any statements made to counsel concerning whether he confessed the murder to the

police.[1]

While discovery orders are not typically subject to interlocutory appellate review, courts of

appeals have utilized mandamus review when important interests such as privilege are at issue. *See,*

*e.g.*, *In re Regents of University of California*, 101 F.3d 1386 (Fed. Cir. 1996), *cert. denied* 520 U.S.

1193; *In re Bieter*, 16 F.3d 929, 931-33 (8th Cir. 1994); *Chase Manhattan Bank, N.A. v. Turner &*

*Newall*, *PLC,* 964 F.2d 159, 163 (2d Cir. 1992). Two courts of appeals, confronting discovery

---

[1]Lott's objections to the District Court's discovery order are not strictly limited to claims of attorney-client and work product privilege. Indeed, he makes additional arguments concerning the scope of the warden's available discovery. As the scope of discovery and admissibility is not a proper issue for interlocutory appeal, we do not address this aspect of the order. Instead, our review is limited to the District Court's determination that these important privileges have been waived.

orders issued over claims of attorney-client or work product privilege, have taken a different approach and found these rulings immediately appealable under the collateral order doctrine. *See In re Ford Motor Co.*, 110 F.3d 954, 964 (3d Cir. 1997)*; United States v. Philip Morris*, 314 F.3d 612, 617 (D.C. Cir. 2003). Due to the importance of the interest asserted, the novelty of the district court's waiver determination, and Lott's likelihood of success, this Court grants an immediate stay of discovery pending further consideration by this Court of the issues raised by Lott.

In determining whether to grant a stay, this Court considers (1) the likelihood that the party seeking the stay will prevail on the merits, (2) the likelihood that the moving party will be irreparably harmed absent a stay, (3) the prospect that others will be harmed if the court grants the stay, and (4) the public interest in granting the stay. *Grutter v. Bollinger*, 247 F.3d 631, 632, (6th Cir. 2001); *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

Regardless of the jurisdictional basis and the concomitant standard of review, it is likely that Lott will succeed in blocking the execution of the District Court's discovery order. The question at issue is whether the attorney-client and work product privileges have been waived. To be certain, "the [attorney-client] privilege is not an inviolable seal upon the attorney's lips." *Johnson v. Alabama*, 256 F.3d 1156, 1178-79 (11th Cir. 2001). Nor is the protection typically afforded attorney work product inviolable. A habeas petitioner like any other litigant may waive these privileges. Here, this Court must review the District Court's determination that Lott's assertion of actual innocence effected a waiver of the attorney-client and work product privileges.

Generally, "the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties. In addition, a client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure.'" *In re Columbia /HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002) (internal citations omitted). The work-product privilege may also be subject to implied waiver. *In re Perrigo Co.*, 128 F.3d 430, 445 (6th Cir. 1997). For example, "the affirmative use of the work product to advance the claimant's interests" would implicitly waive any privilege. *Id.*

In the habeas context, courts have found implied waiver of the attorney-client privilege when the petitioner "injects into [the] litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct." *Johnson,* 256 F.3d 1156, 1178 (11th Cir. 2001). But, this implied waiver has typically been the result of a petitioner's assertion of his own counsel's ineffectiveness. *See id*. ("By alleging that his attorneys provided ineffective assistance of counsel in their choice of a defense strategy, [the petitioner] put at issue–and thereby waived–any privilege that might apply to the contents of his conversations with those attorneys to the extent those conversations bore on his attorneys' strategic choices."); *see also Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003); *Tasby v. United States*, 504 F.3d 332, 336 (8th Cir. 1974) ("When a client calls into public question the competence of his attorney, the privilege is waived.").

Implied waivers are consistently construed narrowly. Courts "must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Bittaker*, 331 F.3d at 720. In a different context, the Court of Appeals for the Third Circuit found that a "party waives the privilege only when he or she "has made the decision and taken the affirmative step in the litigation

-4-

to place the advice of the attorney in issue." *U.S. Fire Insurance Co. v. Asbestospray, Inc.*, 182 F.3d 201, 212 (3d Cir. 1999); *see also Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 (7th Cir. 1995). ("[T]he attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation.").

To be sure, litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. "[T]he attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Blizerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). But, while the sword stays sheathed, the privilege stands.

In this case, the District Court applies implied waiver in a completely new context with no citation to any legal authority. Rather than finding that Lott had put his attorney's performance or strategic decisions at issue and determining that he took the affirmative action to waive the privilege, the court finds waiver in Lott's assertion that the police invented the confession and in his assertion that he is innocent. Neither of Lott's assertions relate to what his attorney knew or did in this case. Instead, they are assertions about Lott's actions, i.e, whether he killed McGrath and whether he confessed to the killing. We have not been able to discover a single case where a court has found that implied waiver applied in a similar fashion.

The link between the waived privilege and the actual communications injected into the litigation by the petitioner was noted in another recent case from the northern district. *See Mason v. Mitchell*, 293 F. Supp.2d 819, (N.D. Ohio 2003). In *Mason*, the district court found that the petitioner implicitly waived attorney-client privilege by putting his attorney's performance at issue, but was careful to note that "the waiver in habeas cases should be limited to the extent necessary to

litigate a petitioner's ineffective assistance of counsel claims." *Mason*, 293 F. Supp.2d at 823 (citing

*Bittaker*, 331 F.3d at 722). As such, the *Mason* court rejected the warden's request "to question the

Petitioner about what he told his trial counsel regarding his involvement in the crime." *Id.* Also,

in *Mason*, while the district court found the petitioner had implicitly waived the work product

privilege regarding a psychiatric examination, that waiver did not extended to the privilege

surrounding any inculpatory statements the Petitioner may have made to the psychiatrist. *Id.* at 825.

The only authority that the District Court cites in support of this novel finding of implied

waiver is an unreported order from the northern district. Lott's Petition for Mandamus, Exhibit 1,

Discovery Order at 9-10 (quoting *Phillips v. Bradshaw*, No. 5:03 CV 0875 at 2-3 (N.D. Ohio Apr.

30, 2004) (order granting *in camera* inspection of documents)). Moreover, the cited order does not

address the injection of actual innocence as an implied waiver of the privilege. Instead, that order

appears to address the more typical implied waiver that is triggered by an ineffective assistance of

counsel claim. *See id.* at 9 (quoting *Phillips*) ("Although the privilege typically is the client's to

assert or waive, courts have recognized that a client implicitly waives the attorney-client privilege

by putting the attorney's performance at issue during subsequent litigation."). Likewise, the warden,

responding in opposition to the stay of discovery, cites no authority and provides only scant

reasoning for why the attorney-client privilege has been waived:

> The only area in which Lott would assert harm then is discovery for which he would claim attorney-client and work-product privileges, but there the question has to be whether Lott can assert harm in the discovery of documents concerning a topic that Lott directly put in issue. If there is harm permitting discovery into otherwise privileged material, Lott has brought that harm onto himself. He simply cannot argue that he is innocent and expect the Court to shield him from disclosing information that shows his guilt.

Respondent's Opposition to Stay at 4. Given that the district court's order appears to be an unsupported departure from the law of implied waiver, it is likely that relief will be granted by this Court.

In considering whether or not to issue a stay, the petitioner's likelihood of success on the merits is only one factor. This Court should also consider (2) the likelihood that the moving party will be irreparably harmed absent a stay, (3) the prospect that others will be harmed if the court grants the stay, and (4) the public interest in granting the stay.

This Court has noted, in a similar civil context, the inherent harmfulness resulting from the discovery of privileged communications: "We find, as have several courts, that forced disclosure of privileged material may bring about irreparable harm." *In re Perrigo*, 128 F.3d at 437. In a similar case, an appellate court found that the breach of privilege alone constituted irreparable harm: "Although [the party] 'has not asserted any specific irreparable injury that would occur' if it produced the [document], the general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of privileged documents to an adverse party is clear enough." *United States v. Philip Morris*, *Inc.*, 314 F.3d 612, 621-22 (D.C. Cir. 2003); *see also In re Ford Motor Co.*, 110 F.3d 954, 962-64 (3d Cir. 1997) ("Appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials. . . . [T]he cat is already out of the bag. . . . [T]here is no way to unscramble the egg scrambled by the disclosure . . . .").

The warden's strongest argument concerns the third factor: the prospect that others will be harmed by the issuance of a stay. Any stay, even a short stay, could arguably injure the interests of

the State of Ohio. The State has expressed that "[t]he State has waited eighteen years to carry out

the death sentence," and that "[e]very day [the] stay of execution remains in place is an injury to the

State of Ohio." Certainly, a stay of discovery would further prolong review of what very well may

be a just sentence imposed almost two decades ago. The State certainly has an interest in the

efficient use of judicial resources and in achieving final resolution of criminal cases. This factor

does weigh against the issuance of a stay.

Finally, this Court has noted that the scope of the attorney-client privilege is a matter that

is inherently linked to the "public end" of adequate legal representation:

> [A]ttorney-client privilege is a matter of common law right, "the oldest of the
> privileges for confidential communication known to the common law." It is not a
> creature of contract, arranged between parties to suit the whim of the moment.

*In re Columbia/HCA Healthcare Corp. Billing Practices Litigation,* 293 F.3d 289, 303 (6th Cir.

2002) (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981) (internal citations omitted).

This public interest requires that the courts endeavor to clearly delineate the creation, scope, and

dissolution of these essential privileges:

> If we intend to serve the interests of justice by encouraging consultation with counsel
> free from the apprehension of disclosure, then courts must work to apply the
> privilege in ways that are predictable and certain. "An uncertain privilege--or one
> which purports to be certain, but rests in widely varying applications by the courts--is
> little better than no privilege."

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.* 32 F.3d 851, 862 -863 (3d Cir. 1994) (quoting *In re*

*von Bulow,* 828 F.2d 94, 100 (2d Cir. 1987)).

Given the likelihood that relief will be granted, the irreparable harm resulting to the

petitioner if privileged information is disclosed, and the important public interest at stake, this Court

finds the issuance of a stay appropriate. It is difficult to see how the harm that would be caused to the State by a stay could outweigh the important interests of Lott, the legal system, and the public interest in resolving this question. To the extent the District Court's order permits the discovery of material otherwise protected by the attorney-client or work product privileges, that order is stayed pending further consideration of Lott's request for relief.

The parties may submit further briefs as to (1) the jurisdictional authority of this Court to decide the issues raised by Lott and (2) the extent to which the claims raised in Lott's second petition implicitly waive the protections afforded by the attorney-client and work product privileges. Such briefs should be filed by July 18, 2005. The Court will then issue an opinion on the merits.

Accordingly, a stay is issued. The petitioner during discovery proceedings shall not be required to waive the attorney/client privilege or the work product privilege pending further orders of this Court.

ENTERED BY ORDER OF THE COURT

_____
Leonard Green, Clerk

**Boggs, Chief Judge, dissenting**. The court orders a stay to any discovery that would otherwise be barred by the attorney-client or work product privileges until we are able to consider Lott's request for relief. Because it does so without sufficiently close scrutiny to the form of relief Lott requests, which is interlocutory mandamus relief from a discovery order, I believe it has incorrectly evaluated not only Lott's likelihood of success, but also the other factors that affect our decision to grant a stay. Though these reasons would suffice to motivate my dissent, I further disagree with the court's suggestion that a habeas petitioner asserting actual innocence does not waive attorney-client privilege. For these reasons, I respectfully dissent.

Lott's motion for a stay of proceedings cannot be divorced from the relief he ultimately seeks. The court correctly identifies the four factors relevant to the granting of a stay, which are (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. Slip Op. at 3; *Grutter v. Bollinger*, 247 F.3d 631, 632 (6th Cir. 2001) (citing *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (identifying these four factors). However, Lott is not before this court on an appeal from the resolution of a petition for writ of habeas corpus. He is instead before us on a petition for mandamus relief, which "is an extraordinary remedy, only infrequently utilized by this court." *In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997). As such, we cannot examine Lott's motion for a stay only on the substantive legal question involved, though, were we to, I would still

disagree. Rather, our review must evaluate these factors in light of Lott's request of interlocutory relief.

Whether Lott should receive a writ of mandamus turns on a variety of factors beyond simply whether we ultimately find merit in Lott's legal position. *See ibid.* These factors include:

(1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired.
(2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.)
(3) The district court's order is clearly erroneous as a matter of law.
(4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.
(5) The district court's order raises new and important problems, or issues of law of first impression.

*Ibid.* (quoting *In re Chimenti*, 79 F.3d 534, 540 (6th Cir. 1996)). In deciding whether or not to grant the writ, we balance the factors. *Ibid.* (quoting *Chimenti*, 79 F.3d at 540). This is necessary because "'[r]arely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable.'" *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 304 (6th Cir. 1984) (quoting *Bauman v. United States Dist. Court*, 557 F.2d 650 655 (9th Cir. 1977)). Indeed, this court has observed that factors (4) and (5) are "to some degree contradictory." *In re Parker*, 49 F.3d 204, 211 (6th Cir. 1995). My disagreement with the majority begins with, but is not limited to, its failure to adequately consider these factors in evaluating whether to grant a stay.

While I believe the question of whether a claim of actual innocence waives attorney-client privilege is a new and important issue, I cannot agree that direct appeal will not offer Lott an adequate forum in which to adjudicate it. More to the point, I do not believe that denying Lott's mandamus petition, but of course leaving him his standard course of appeals should that become

desirable to him, will prejudice Lott "in a way not correctable on appeal." *Ibid.* In *Perrigo*, this court recognized that discovery-based violations of attorney-client privilege "*may* bring about irreparable harm." *Id.* at 437 (emphasis added). But that cannot mean that *any* discovery order that impinges on the privilege is automatically grounds for mandamus relief. *See id.* at 435 & 437 (emphasizing our court's "flexible" approach to mandamus review). Instead, the risk of irreparable harm turns on the circumstances. *See id.* at 437 (discussing particular problems faced in that case by a corporation asserting attorney-client privilege).

The circumstances of this case convince me that mandamus relief is not warranted. Petitioner's case is very different from the typical case in which mandamus relief is granted for abusive discovery orders: a complex commercial litigation that is in its beginning stages. This difference matters, not because the harm facing Lott is any less (quite the opposite), but because it impacts this court's ability to remedy that harm on appeal. In the conventional circumstance of commercial litigation, the aggrieved party reasonably fears that losing attorney-client privilege opens a Pandora's box of wrongly gained evidence and accompanying legal theories. An appellate court is thus faced with the probability that a comprehensive case will emerge on appeal from which "tainted" evidence and theories cannot be separated from those legitimately developed. *See United States v. Philip Morris, Inc.*, 315 F.3d 612, 619 (D.C. Cir. 2003) ("It would be impossible for a court to sort out and redress the harm caused by the incorrect disclosure."). As one of our sister circuits has accurately, if colorfully, put it, "there is no way to unscramble the egg scrambled by disclosure." *In re Ford Motor Co.*, 110 F.3d 954, 963 (3d Cir. 1997).

That concern is not nearly as prevalent in this case. Here, the parties have been litigating against each other for nearly twenty years throughout the state and federal courts. The issues are clear. Thus, the state's attorneys are unlikely to use whatever they find to pursue new avenues of evidence, adopt new legal positions, or the like. Instead, they hope to extract evidence readily identifiable as stemming from otherwise privileged communications: that Lott admitted to his lawyers either that he had committed the murder or that he confessed to police and that his lawyers were aware of the victim's description of his attacker. They seek to extract this evidence for one reason only: to convince the district court that Lott cannot make a claim of factual innocence. Rather than a mix of legal theories that will be difficult to unravel, this court is faced with one legal theory supported by evidence that can be easily separable into that which is potentially privileged and that which is not. Thus, there is little reason to believe that we could not remedy any error, if indeed there were to be error, on direct appeal, just as we do with other evidentiary issues.

For similar reasons, I also evaluate the second factor differently than the court. The above reasoning makes me doubt that Lott will be "*irreparably* harmed" should we deny the stay. *Grutter*, 247 F.3d at 632 (emphasis added). Because I disagree with the majority that, in this case, the disclosure of privileged documents could not be remedied on appeal, I also believe that our future substantive adjudication of Lott's petition for mandamus relief can remedy any harm this court

concludes he has suffered.[2] Thus, the present circumstance is not a case where the harm facing petitioner "cannot be undone." *Id.* at 633.

Of greater importance is my disagreement with the court concerning the fourth and final factor: whether the public interest favors granting the stay. *Ibid.* The majority relies on the general public interest on a reliable and uniform attorney-client privilege. *See* Slip Op. at 8; *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862-63 (3d Cir. 1994). I do not necessarily dispute that the public has such an interest. I question, however, whether that interest is impacted by the grant or denial of this stay, which is only effective for the duration of our consideration of Lott's petition for mandamus relief. While the public may have some interest in our eventual resolution of this case and its impact on the contours of the attorney-client privilege, that interest is remote from its interest in one stay affecting one litigant in a unique predicament.

Instead, I would find the public's interest, that of the people of Ohio, to be more closely aligned with the State of Ohio's interests than those of petitioner. The State's interests in finality and efficient uses of its judicial resources, *see* Slip Op. at 8, are also the people's interest. Their tax dollars comprise the State's judicial resources. The public also "'has a vital interest in the fair and prompt conclusion of habeas corpus petitions in federal courts, particularly when they involve a serious crime prosecuted by one of the states.'" *Parker*, 49 F.3d at 208 (quoting *Spann v. Martin*, 963 F.2d 663, 673 (4th Cir.1992)).

---

[2]Indeed, should this court decide that Lott has not implicitly waived the attorney-client privilege as to his actual innocence, we could file an opinion on the merits before the district court considers the evidence at issue.

Therefore, I would deny the stay on the basis that all four factors counsel against its issuance. To summarize: as the court agrees, the State has an interest in prompt resolution of this case. At this stage in the litigation, the public's interest seems to me to be squarely aligned with that of the State of Ohio. While Lott may be injured by the results of this discovery order, I cannot say that the harm will be irreparable because it seems this issue can be resolved via the normal appeals process. For that same reason, I believe Lott cannot show a likelihood of success on the merits of his petition for mandamus, the only issue currently before us, regardless of whether this court disagrees with the district court's legal conclusion that an assertion of actual innocence waives attorney-client privilege. I would therefore deny the stay for the above-mentioned reasons.

However, especially in light of the majority's arguments to the contrary, I wish to express my respectful disagreement with its suggestion that a habeas petitioner's assertion of actual innocence, when used to argue for the consideration of a second habeas petition, does not implicitly waive the petitioner's attorney-client privilege as to that issue. To begin with, the deficiency with the district court's position cannot be that there is no direct authority to support it. If so, then the same criticism can be levied against the court's current order. Neither the majority nor I can find authority that directly addresses the question at issue: whether the assertion of a claim of actual innocence waives the attorney-client privilege. The novelty of the district court's position is little indication that it is incorrect.[3]

---

[3]Thus, it is also no reason to disagree with the district court's reasoning that habeas courts have generally applied an implied waiver of attorney-client privilege when the petitioner asserts ineffective assistance of counsel. The issue is whether that principle has application in this context.

I do not disagree with the court that implied waivers are justified on the basis of "ensur[ing] the fairness of the proceedings before it." *See* Slip Op. at 4 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (en banc)). However, as our sister circuit made clear in *Bittaker*, the waiver should be tailored narrowly "so as to be fair to the opposing side." *Ibid.* This requires a waiver "closely tailored . . . to the needs of the opposing party in litigating the claim in question." *Ibid.* In *Bittaker*, that claim was an ineffective assistance of counsel claim and our sister circuit reasonably limited the scope of the petitioner's waiver to matters relating to his counsel's ineffectiveness.

Here, the claim is one of actual innocence because petitioner seeks to file a successive habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence is "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). The inquiry is then into whether Lott in fact committed the murder, not whether the state could meet its burden of proof that Lott committed the murder. As the Supreme Court decided in *Schlup*, this means that "the district court is not bound by the rules of admissibility that would govern at trial." 513 U.S. at 327. The district court's determination can be based on "relevant evidence that was either excluded or unavailable at trial." *Id.* at 327-28. What Lott said to his trial counsel about the crime is certainly relevant. It could never have been admitted at trial because of the attorney-client privilege. But, on my reading, *Schlup* indicates that the admissibility of the evidence at a regular trial is irrelevant.

Moreover, as the Ninth Circuit recognized in *Bittaker*, the federal system has interests in the adjudication of habeas petitions that are distinct from the state's interests. 331 F.3d at 721-22. Our sister circuit admitted that, at least hypothetically, the attorney-client privilege "might have to yield" to a particularly important federal interest. *Id.* at 722. While it could "conceive of no federal

interest in enlarging the scope of the waiver beyond what is needed to litigate the claim of ineffective assistance of counsel," *ibid.*, the Ninth Circuit was not faced with a claim of actual innocence. Actual innocence serves as an exception for otherwise procedurally defaulted claims on the basis that it is a fundamental miscarriage of justice to incarcerate the "entirely innocent." *Schlup*, 513 U.S. at 325. The federal system has an interest in limiting this exception to "the 'extraordinary case'" *id.* at 321 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)), that is applied for "those who [are] truly deserving," *ibid.* To determine if Lott is truly deserving, i.e., that he is actually innocent, I am inclined to believe the federal district court has a right to examine all of the relevant evidence.

Therefore, I believe that Lott cannot show a likelihood of success on the merits because, regardless of whether we review the district court's decision now or on direct appeal, I am inclined to believe that it did not err. However, granting a stay in this case requires more than disagreeing with the district court's conclusion about the scope of implied waiver. To grant the stay, one must assert that Lott will likely succeed in his petition for mandamus relief, which may not happen for reasons other than the implied waiver issue, and that at least some of the other factors favor granting a stay until we adjudicate his petition for mandamus. For the reasons stated above, I believe all these factors favor respondent and would accordingly deny the stay.