ORDER

Gregory Lott has petitioned this Court for mandamus relief from an order that would require discovery of material that he claims is protected by the attorney-client and work product privileges. Lott was convicted and sentenced to death for the 1986 brutal murder of John McGrath in East Cleveland, Ohio. He is currently litigating his second habeas corpus proceeding in the Northern District of Ohio. See In re Lott, 366 F.3d 431, 434 (6th Cir.2004) (authorizing Lott to file a second petition). In this petition, Lott claims that the prosecution withheld vital exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In order for Lott to bring this second petition, he must establish that but for this constitutional error, no reasonable fact finder would have found him guilty of the murder. See 28 U.S.C. § 2244(b)(2)(B)(ii). The District Court has apparently construed Lott’s pleadings as presenting a claim of actual innocence of the underlying crime and has found this actual innocence claim relevant to the habeas proceeding. As such, the District Court determined that Lott injected his factual guilt or innocence of the murder into the proceedings.
Surprisingly, the District Court further ruled that through his assertion of innocence, Lott has “implicitly waived the attorney-client and work product privileges to the extent necessary for the Respondent to defend the actual innocence.” Lott’s Petition for Mandamus, Exhibit 1 (Judge O’Malley’s Discovery Order at 9-11). In accordance with this ruling, the court has authorized the deposition of and production of documents from Lott’s trial counsel. Specifically, the court ruled that the warden could inquire into any statements Lott made to his counsel regarding his innocence or guilt and any statements made to counsel concerning whether he confessed the murder to the police.[1]
While discovery orders are not typically subject to interlocutory appellate review, courts of appeals have utilized mandamus review when important interests such as privilege are at issue. See, e.g., In re Regents of University of California, 101 F.3d 1386 (Fed.Cir.1996), cert. denied 520 U.S. 1193, 117 S.Ct. 1484, 137 L.Ed.2d 695; In re Bieter, 16 F.3d 929, 931-33 (8th Cir.1994); Chase Manhattan Bank, N.A. v. Turner & Newall, PLC, 964 F.2d 159, 163 (2d Cir.1992). Two courts of appeals, confronting discovery orders issued over claims of attorney-client or work product privilege, have taken a different approach and found these rulings immediately appealable under the collateral order doctrine. See In re Ford Motor Co., 110 F.3d 954, 964 (3d Cir.1997); United States v. Philip Morris, 314 F.3d 612, 617 (D.C.Cir. 2003). Due to the importance of the interest asserted, the novelty of the district court’s waiver determination, and Lott’s likelihood of success, this Court grants an immediate stay of discovery pending further consideration by this Court of the issues raised by Lott.
*660 In determining whether to grant a stay, this Court considers (1) the likelihood that the party seeking the stay will prevail on the merits, (2) the likelihood that the moving party will be irreparably harmed absent a stay, (3) the prospect that others, will be harmed if the court grants the stay, and (4) the public interest in granting the stay. Grutter v. Bollinger, 247 F.3d 631, 632, (6th Cir.2001); Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir.1991).
Regardless of the jurisdictional basis and the concomitant standard of review, it is likely that Lott will succeed in blocking the execution of the District Court’s discovery order. The question at issue is whether the attorney-client and work product privileges have been waived. To be certain, “the [attorney-client] privilege is not an inviolable seal upon the attorney’s lips.” Johnson v. Alabama, 256 F.3d 1156, 1178-79 (11th Cir.2001). Nor is the protection typically afforded attorney work product inviolable. A habeas petitioner like any other litigant may waive these privileges. Here, this Court must review the District Court’s determination that Lott’s assertion of actual innocence effected a waiver of the attorney-client and work product privileges.
Generally, “the ‘attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties. In addition, a client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure.’” In re Columbia /HCA Healthcare Corp. Billing Practices Litigation, 293 F.3d 289, 294 (6th Cir.2002) (internal citations omitted). The work-product privilege may also be subject to implied waiver. In re Perrigo Co., 128 F.3d 430, 445 (6th Cir.1997). For example, “the affirmative use of the work product to advance the claimant’s interests” would implicitly waive any privilege. Id.
In the habeas context, courts have found implied waiver of the attorney-client privilege when the petitioner “injects into [the] litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys’ conduct.” Johnson v. Alabama, 256 F.3d 1156, 1178 (11th Cir.2001). But, this implied waiver has typically been the result of a petitioner’s assertion of his own counsel’s ineffectiveness. See id. (“By alleging that his attorneys provided ineffective assistance of counsel in their choice of a defense strategy, [the petitioner] put at issue-and thereby waived — any privilege that might apply to the contents of his conversations with those attorneys to the extent those conversations bore on his attorneys’ strategic choices.”); see also Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003); Tasby v. United States, 504 F.2d 332, 336 (8th Cir.1974) (“When a client calls into public question the competence of his attorney, the privilege is waived.”).
Implied waivers are consistently construed narrowly. Courts “must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.” Bittaker, 331 F.3d at 720. In a different context, the Court of Appeals for the Third Circuit found that a “party waives the privilege only when he or she ‘has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue.’” U.S. Fire Insurance Co. v. Asbestospray, Inc., 182 F.3d 201, 212 (3d Cir.1999); see also Garcia v. Zenith Electronics Corp., 58 F.3d 1171, 1175 (7th Cir.1995). (“[T]he attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney’s advice at issue in the litigation.”).
To be sure, litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. “[T]he attorney-client privilege cannot at *661 once be used as a shield and a sword.” United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir.1991). But, while the sword stays sheathed, the privilege stands.
In this case, the District Court applies implied waiver in a completely new context with no citation to any legal authority. Rather than finding that Lott had put his attorney’s performance or strategic decisions at issue and determining that he took the affirmative action to waive the privilege, the court finds waiver in Lott’s assertion that the police invented the confession and in his assertion that he is innocent. Neither of Lott’s assertions relate to what his attorney knew or did in this case. Instead, they are assertions about Lott’s actions, i.e, whether he killed McGrath and whether he confessed to the killing. We have not been able to discover a single case where a court has found that implied waiver applied in a similar fashion.
The link between the waived privilege and the actual communications injected into the litigation by the petitioner was noted in another recent case from the northern district. See Mason v. Mitchell, 293 F.Supp.2d 819, (N.D.Ohio 2003). In Mason, the district court found that the petitioner implicitly waived attorney-client privilege by putting his attorney’s performance at issue, but was careful to note that “the waiver in habeas cases should be limited to the extent necessary to litigate a petitioner’s ineffective assistance of counsel claims.” Mason, 293 F.Supp.2d at 823 (citing Bittaker, 331 F.3d at 722). As such, the Mason court rejected the warden’s request “to question the Petitioner about what he told his trial counsel regarding his involvement in the crime.” Id. Also, in Mason, while the district court found the petitioner had implicitly waived the work product privilege regarding a psychiatric examination, that waiver did not extended to the privilege surrounding any inculpatory statements the Petitioner may have made to the psychiatrist. Id. at 825.
The only authority that the District Court cites in support of this novel finding of implied waiver is an unreported order from the northern district. Lott’s Petition for Mandamus, Exhibit 1, Discovery Order at 9-10 (quoting Phillips v. Bradshaw, No. 5:03 CV 0875 at 2-3 (N.D.Ohio April 30, 2004) (order granting in camera inspection of documents)). Moreover, the cited order does not address the injection of actual innocence as an implied waiver of the privilege. Instead, that order appears to address the more typical implied waiver that is triggered by an ineffective assistance of counsel claim. See id. at 9 (quoting Phillips) (“Although the privilege typically is the client’s to assert or waive, courts have recognized that a client implicitly waives the attorney-client privilege by putting the attorney’s performance at issue during subsequent litigation.”). Likewise, the warden, responding in opposition to the stay of discovery, cites no authority and provides only scant reasoning for why the attorney-client privilege has been waived:
The only area in which Lott would assert harm then is discovery for which he would claim attorney-client and work-product privileges, but there the question has to be whether Lott can assert harm in the discovery of documents concerning a topic that Lott directly put in issue. If there is harm permitting discovery into otherwise privileged material, Lott has brought that harm onto himself. He simply cannot argue that he is innocent and expect the Court to shield him from disclosing information that shows his guilt.
Respondent’s Opposition to Stay at 4. Given that the district court’s order appears to be an unsupported departure from the law of implied waiver, it is likely that relief will be granted by this Court.
*662 In considering whether or not to issue a stay, the petitioner’s likelihood of success on the merits is only one factor. This Court should also consider (2) the likelihood that the moving party will be irreparably harmed absent a stay, (3) the prospect that others will be harmed if the court grants the stay, and (4) the public interest in granting the stay.
This Court has noted, in a similar civil context, the inherent harmfulness resulting from the discovery of privileged communications: “We find, as have several courts, that forced disclosure of privileged material may bring about irreparable harm.” In re Perrigo, 128 F.3d at 437. In a similar case, an appellate court found that the breach of privilege alone constituted irreparable harm: “Although [the party] ‘has not asserted any specific irreparable injury that would occur’ if it produced the [document], the general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of privileged documents to an adverse party is clear enough.” United States v. Philip Morris, Inc., 314 F.3d 612, 621-22 (D.C.Cir.2003); see also In re Ford Motor Co., 110 F.3d 954, 962-64 (3d Cir. 1997) (“Appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials.... [T]he cat is already out of the bag.... [T]here is no way to unscramble the egg scrambled by the disclosure .... ”).
The warden’s strongest argument concerns the third factor: the prospect that others will be harmed by the issuance of a stay. Any stay, even a short stay, could arguably injure the interests of the State of Ohio. The State has expressed that “[t]he State has waited eighteen years to carry out the death sentence,” and that “[e]very day [the] stay of execution remains in place is an injury to the State of Ohio.” Certainly, a stay of discovery would further prolong review of what very well may be a just sentence imposed almost two decades ago. The State certainly has an interest in the efficient use of judicial resources and in achieving final resolution of criminal cases. This factor does weigh against the issuance of a stay.
Finally, this Court has noted that the scope of the attorney-client privilege is a matter that is inherently linked to the “public end” of adequate legal representation:
[A]ttorney-elient privilege is a matter of common law right, “the oldest of the privileges for confidential communication known to the common law.” It is not a creature of contract, arranged between parties to suit the whim of the moment.
In re Columbia/HCA Healthcare Corp. Billing Practices Litigation, 293 F.3d 289, 303 (6th Cir.2002) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (internal citations omitted)). This public interest requires that the courts endeavor to clearly delineate the creation, scope, and dissolution of these essential privileges:
If we intend to serve the interests of justice by encouraging consultation with counsel free from the apprehension of disclosure, then courts must work to apply the privilege in ways that are predictable and certain. “An uncertain privilege — or one which purports to be certain, but rests in widely varying applications by the courts — is little better than no privilege.”
Rhone-Poulenc Rorer Inc. v. Home Indem. Co. 32 F.3d 851, 862 -863 (3d Cir. 1994) (quoting In re von Bulow, 828 F.2d 94, 100 (2d Cir.1987)).
Given the likelihood that relief will be granted, the irreparable harm resulting to the petitioner if privileged information is disclosed, and the important public inter *663 est at stake, this Court finds the issuance of a stay appropriate. It is difficult to see how the harm that would be caused to the State by a stay could outweigh the important interests of Lott, the legal system, and the public interest in resolving this question. To the extent the District Court’s order permits the discovery of material otherwise protected by the attorney-client or work product privileges, that order is stayed pending further consideration of Lott’s request for relief.
The parties may submit further briefs as to (1) the jurisdictional authority of this Court to decide the issues raised by Lott and (2) the extent to which the claims raised in Lott’s second petition implicitly waive the protections afforded by the attorney-client and work product privileges. Such briefs should be filed by July 18, 2005. The Court will then issue an opinion on the merits.
Accordingly, a stay is issued. The petitioner during discovery proceedings shall not be required to waive the attorney/client privilege or the work product privilege pending further orders of this Court.

. Lott’s objections to the District Court’s discovery order are not strictly limited to claims of attorney-client and work product privilege. Indeed, he makes additional arguments concerning the scope of the warden’s available discovery. As the scope of discovery and admissibility is not a proper issue for interlocutory appeal, we do not address this aspect of the order. Instead, our review is limited to the District Court’s determination that these important privileges have been waived.