RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0383p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

In re: GREGORY LOTT,

*Petitioner.*

No. 05-3532

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-00822—Kathleen McDonald O'Malley, District Judge.

Submitted: May 10, 2005

Decided and Filed: September 9, 2005

Before: BOGGS, Chief Judge; MERRITT and COLE, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Gregory W. Meyers, Robert K. Lowe, Melissa J. Callais, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Petitioner. David A. Singleton, PRISON REFORM ADVOCACY CENTER, Cincinnati, Ohio, Marc R. Kadish, MAYER, BROWN, ROWE & MAW, Chicago, Illinois, Jeffrey M. Gamso, AMERICAN CIVIL LIBERTIES UNION OF OHIO FOUNDATION, Cleveland, Ohio, Eugene P. Whetzel, OHIO STATE BAR ASSOCIATION, Columbus, Ohio, Jason A. Macke, OHIO ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, Columbus, Ohio, for Amici Curiae.

MERRITT, J., delivered the opinion of the court, in which COLE, J., joined. BOGGS, C. J. (pp. 10-16), delivered a separate dissenting opinion.

_____

## OPINION

_____

MERRITT, Circuit Judge. Gregory Lott has petitioned this Court for mandamus relief from a discovery order in which the District Court "waived" his attorney-client privilege because he claims actual innocence. There is no case authority holding that a claim of actual innocence "waives" the attorney-client privilege or similar privileges such as the doctor-patient and priest-penitent privilege.

Lott was convicted and sentenced to death for the 1986 murder of John McGrath, an elderly resident of East Cleveland, Ohio. Lott is currently in the midst of litigating his second habeas corpus proceeding pursuant to this Court's authorization. *See In re Lott*, 366 F.3d 431, 434 (6th Cir. 2004). In this petition, Lott contends that the prosecutor in his original trial withheld vital

exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). As set forth in our order authorizing Lott's second petition, Lott has made a prima facie showing that the prosecutor in his original trial both withheld important evidence from the court and made statements to the court that were directly contradicted by the evidence withheld from the defendant. *Lott*, 366 F.3d at 433.

In order for Lott to succeed in this second application for habeas relief, he must establish that but for the constitutional errors during his trial, no reasonable factfinder would have found him guilty of the murder. *See* 28 U.S.C. § 2244(b)(2)(B)(ii). Lott maintains that he is, in fact, innocent of the murder. To counter this claim of innocence, the warden seeks discovery of any evidence that might demonstrate Lott's guilt, including evidence of an alleged confession that was suppressed during the original criminal trial due to a *Miranda* violation.

The District Court ruled that through his assertion of actual innocence, Lott has "implicitly waived the attorney-client and work product privileges to the extent necessary for the Respondent to defend the actual innocence claim." *Lott v. Bradshaw*, No. 1:04-CV-822 (N.D. Ohio Mar. 29, 2005) (Order granting in part and denying in part Respondent's Motion for Discovery at 9-11). In accordance with this ruling, the District Court authorized the warden to depose and seek production of documents from Lott's trial counsel. Specifically, the Court ruled that Lott's trial counsel must provide any relevant information he has concerning whether Lott is guilty of the murder and whether Lott confessed the murder to the police.

On May 9, 2005, Lott filed a petition for mandamus with this Court and a motion to stay discovery pending the Court's consideration of his mandamus petition. This Court stayed the discovery proceedings on June 22, 2005. Having now received further briefings from the parties, a response by the District Court Judge, as well as numerous amicus briefs from interested parties, and a response to the briefs from the State, we now turn to the merits of Lott's mandamus petition. The District Court's order constitutes a departure from existing law for which we find no precedent. It undermines the historically strong protections of the attorney-client privilege.[1] As the order places the privileged relationship between a client and his attorney in jeopardy, this Court will issue the writ.

## I. Jurisdiction

Discovery orders are generally not considered final for purposes of 28 U.S.C. § 1291. Typically, review of such orders becomes available only when there is a final judgment in the case. Assuming that this court does not have jurisdiction to review the District Court's order under § 1291, we must determine if there is some other jurisdictional basis for us to conduct immediate review of the order.[2] Pursuant to 28 U.S.C. § 1292(b), a district judge may certify an order not

---

[1]While our decision is couched in terms of the attorney-client privilege, it applies with equal force to the work product privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981); *Bittaker v. Woodford*, 331 F.3d 715, 722 n.6 (9th Cir. 2003).

[2]It should be noted that some courts of appeals have found that orders compelling discovery over a claim of privilege are immediately appealable under the collateral order doctrine. *United States v. Philip Morris*, 314 F.3d 612, 617 (D.C. Cir. 2003); *In re Ford Motor Co.*, 110 F.3d 954, 964 (3d Cir. 1997). This doctrine permits an appeal to lie if (1) the order from which the appellant appeals conclusively determines the disputed question; (2) the order resolves an important issue that is completely separate from the merits of the dispute; and (3) the order is effectively unreviewable on appeal from a final judgment. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). While discovery orders such as the one at issue will satisfy most of the *Cohen* elements, there is some question as to whether the "importance" element of the second prong will be met in every appeal of a privilege issue. *See Johnson*, 515 U.S. at 315 ("We of course decide appealabilty for categories of orders rather than individual orders. Thus, we do not now in each individual case engage in ad hoc balancing to decide the issues of appealability"). There is some question as to

otherwise appealable for interlocutory appeal when that order "involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." Such interlocutory appeal, however, is unavailable in this case because the District Court refused to certify the issue for appeal. *Lott v. Bradshaw*, No. 1:04-CV-822 (N.D. Ohio Apr. 28, 2005) (Denial of Petitioner Lott's motion to certify for appeal the order granting respondent discovery). When there is extraordinary need for review of an order before final judgment and the District Court has refused to certify the issue pursuant to § 1292(b), this Court has authority to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651. The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

Our Court has continually recognized that mandamus relief is an "extraordinary remedy" that should be utilized only infrequently. This extraordinary remedy is usually reserved for "questions of unusual importance necessary to the economical and efficient administration of justice," or "important issues of first impression." *EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1061 (6th Cir. 1982). We have "embraced a multi-factor test for determining the propriety of mandamus." *In re Chimente*, 79 F.3d 534, 539 (6th Cir. 1996) (citing *In re Bendectin Products Liability Litigation*, 749 F.2d 300, 304 (6th Cir. 1984)). When making such a determination, this Court will consider whether the following factors are met:

(1)      The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired.

(2)      The petitioner will be damaged or prejudiced in a way not correctable on appeal.

(3)      The district court's order is clearly erroneous as a matter of law.

(4)      The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.

(5)      The district court's order raises new and important problems, or issues of law of first impression.

*Bendectin*, 749 F.2d at 304. We have never required that every element be met in order for mandamus to issue: "'Rarely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable.'" *Id.* (quoting *Bauman v. United States District Court*, 447 F.2d 650, 655 (9th Cir. 1977)). As such, the mandamus analysis "cannot be wholly reduced to formula." *Chimente*, 79 F.3d at 539.

In this case, the first, second, third, and fifth factors all weigh heavily in favor of issuing mandamus. With regard to the first factor, our initial jurisdictional considerations make clear that Lott has no other readily-available means of relief from the discovery order. Mandamus must issue or his counsel will be obliged to obey the binding court order and disclose the privileged communications. Review of that decision will only become available after there is a final judgment. As to the fifth factor, whether an assertion of actual innocence effects an implied waiver of the attorney-client and work product privileges is plainly an issue of first impression in this Circuit, and apparently an issue of first impression in the federal courts. The remaining two factors of the mandamus analysis deserve more extensive examination.

---

whether each and every privilege ruling by a district court necessitates appellate review. This is an area of the law where the use of discretion inherent in our mandamus jurisdiction is more appropriate. As the criteria for mandamus relief are clearly met and our jurisdiction under § 1651 is proper, we see no need to rule on whether or not the District Court's order is collateral.

The oldest of the privileges, the attorney-client privilege has been recognized since the reign of Queen Elizabeth. *See, e.g., Hartford v. Lee*, 21 Eng. Rep. 34 (Ch. 1577). And, as Wigmore notes, the privilege was virtually "unquestioned" even then. 8 J. Wigmore, *Evidence* § 2290, at 547 (3d ed. 1940). The attorney-client privilege encourages "'full and frank communication between attorneys and their clients and thereby promotes broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)). As we have previously noted, "the privilege encourages clients to make full disclosure to their lawyers, and "[a] fully informed lawyer can more effectively serve his client." *Reed v. Baxter*, 134 F.3d 351, 356 (6thCir. 1998). It is not hyperbole to suggest that the attorney-client privilege is a necessary foundation for the adversarial system of justice.

If we intend to serve the interests of justice by encouraging consultation with counsel free from the apprehension of disclosure, then courts must work to delineate the scope of the privilege in ways that are predictable and certain. "An uncertain privilege–or one which purports to be certain, but rests in widely varying applications by the courts–is little better than no privilege." *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (quoting *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987)); *Swidler & Berlin*, 524 U.S. at 409 (recognizing the need to avoid "substantial uncertainty into the privilege's application"). When defining the contours of the attorney-client privilege, we are guided by "the principles of the common law . . . as interpreted by the courts . . . in the light of reason and experience." Fed. R. Evid. 501; *Swidler & Berlin*, 524 U.S. at 403.

We find mandamus is appropriate in this case because if the discovery order stands, the petitioner will be damaged in a way that cannot be corrected through the course of ordinary appeal. *Bendectin*, 749 F.2d at 304.

The inability to cure an unlawful piercing of the privilege through direct appeal has led numerous courts of appeals to regularly utilize mandamus when important interests such as privilege are at issue. "Writ review is rather frequently provided . . . because of the desire to protect against discovery of information that is claimed to be protected by the Constitution, ***privilege***, or more general interests in privacy." 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3935.3, at 605-06 (2d ed. 1996 & supp. 2005) (emphasis added); *see id.* at n.6 (citing cases where mandamus was issued to review claims of privilege); *Hahnemann University Hospital v. Edgar*, 74 F.3d 456, 461 (3d Cir. 1996); *see also In re Regents of University of California*, 101 F.3d 1386, 1387 (Fed. Cir. 1996), *cert. denied* 520 U.S. 1193 (issuing mandamus to set aside discovery order where district court erroneously ordered discovery over claim of attorney-client privilege); *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC,* 964 F.2d 159, 163 (2d Cir. 1992) (similar); *In re Bieter*, 16 F.3d 929, 931-33 (8th Cir. 1994) (similar). This Court has utilized the All Writs Act to alter a discovery order implicating the attorney-client privilege. *In re Perrigo,* 128 F.3d 430, 441 (1997) (altering a discovery order that would have required public disclosure of information protected by the attorney-client privilege).

These Courts have all found that forcing a party to disclose confidential communications and seek redress via direct appeal after the court has reached a final judgment is an inadequate remedy. In *Hahnemann*, the Court of Appeals for the Second Circuit held that the type of relief afforded by direct appeal is usually insufficient when a claim of privilege is made. 74 F.3d at 461 ("when a district court orders production of information over a litigant's claim of a privilege not to disclose, appeal after a final decision is an inadequate remedy . . . for compliance with the production orders complained of destroys the right sought to be protected.") (quoting *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 591 (3d Cir. 1984); *see also University of California*, 101 F.3d at 1387 ("an appeal after disclosure of the privileged communication is an inadequate remedy") (citation omitted). As has been noted in footnote 3, some courts have reached a similar conclusion under the collateral order

doctrine, which requires a finding that an order be "effectively unreviewable" on appeal. *See, e.g., Ford Motor Co.*, 110 F.3d at 963 ("[O]nce putatively protected material is disclosed, the very 'right sought to be protected' has been destroyed) (citation omitted).

It has been argued that mandamus is unnecessary as this Court could remedy any harm on direct appeal. *See In re Lott*, 2005 WL 1515367 at *6-*7 (6th Cir. Jun 22, 2005) (Boggs, C.J., dissenting). By this logic, if discovery proceeded and privileged material was both disclosed and admitted into evidence against Lott, this Court could find that the privileged material should not have been used against him and treat the admission just as we would any other evidentiary error. But as the Court of Appeals for the Second Circuit has noted, "a pertinent aspect of confidentiality will be lost, even though communications later deemed to be privileged will be inadmissible at trial." *Chase Manhattan Bank*, 964 F.2d at 165. The damage to the attorney-client relationship will have already been done by the disclosure itself. If we eat away at the privilege by expanding the fiction of "waiver" (which normally requires an intelligent and knowing relinquishment), pretty soon there will be little left of the privilege.

Privileged communications are not merely withheld from admission against the holder. Instead, the privilege operates to prevent the disclosure itself. In that way, privileges can be distinguished from other rules of admissibility:

> [Some] rules of evidence that do not function as privileges . . . are justified on the ground that they foster some extrinsic policy; e.g., the rule barring evidence of subsequent repairs. . . . One may object to the introduction of evidence of subsequent repairs, but one may not legally refuse to disclose whether or not such repairs have been made.

23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5422, at 668 (1980 & supp. 2005). With privileged communications, in contrast, one may simply refuse to reveal the confidences communicated to an attorney. Mandatory disclosure of the communications is the exact harm the privilege is meant to guard against, and this disclosure is not remedied merely because a disclosed confidence is not used against the holder in a particular case. It "will not suffice to ensure free and full communications by clients who do not rate highly a privilege that is operative only at the time of trial." *Chase Manhattan Bank*, 964 F.2d at 165. If the District Court's discovery order is in error and Lott's counsel is wrongfully forced to disclose privileged communications, there is no way to cure the harm done to Lott or to the privilege itself, even if some of the disclosure's consequences could be remedied on direct appeal.

## II. The Merits

Turning now to the merits of the District Court's privilege ruling, we find that mandamus is justified because the District Court's order is clear error as a matter of law. *Cf. Bendectin*, 749 F.2d at 304.

There is no question that the attorney-client privilege remains applicable in habeas proceedings. "The rule with respect to privileges applies at *all* stages of *all* actions, cases, and proceedings." Fed. R. Evid. 1101(c) (emphasis added). The Rules of Evidence make it abundantly clear that the attorney-client privilege stands in all federal judicial proceedings, which would include habeas proceedings where petitioners assert actual innocence. The commentators make clear that the applicability of the privilege rules in all proceedings "means that privileges can apply even in situations where the other rules of evidence are not applicable." 31 Charles Alan Wright & Victor James Gold, *Federal Practice and Procdure* § 8076, at 618 (2000); *see also id.* at 614 ("The policy behind extending privilege law to all proceedings is that the values protected by privileges can be destroyed by permitting disclosure of privileged material in any judicial context.").

Similarly, the Rules governing discovery indicate that privileged information is not subject to ordinary discovery. Habeas Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings "if and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so." Rules Governing Section 2254 Cases in the United States District Courts, R. 6(a). Rule 6(a) further directs that discovery is to be conducted in accordance with the Federal Rules of Civil Procedure. *Id.* The Rules of Civil Procedure define the scope of discovery as follows: "Parties may obtain discovery regarding any mater, *not privileged*, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). The Rules make clear that privileged material, even relevant privileged material, is not discoverable. There are no exceptions to these rules that would permit the discovery of privileged materials in this habeas proceeding. The discovery the District Court has ordered should therefore only proceed if Lott has waived the attorney-client privilege.

In the discovery order, the District Court did not rule that the attorney-client privilege was inapplicable. Instead, the District Court found that through asserting a claim of innocence, Lott should be deemed to have "waived" the privilege — clearly, a legal fiction if "waiver" means a voluntary act.

The privilege may be waived expressly or by implication in several ways. Generally, "the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties. In addition, a client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation,* 293 F.3d 289, 294 (6th Cir. 2002) (internal citations omitted). The privilege may be implicitly waived by claiming ineffective assistance of counsel or by otherwise raising issues regarding counsel's performance:

> The privilege is held to be waived when a client attacks the quality of his attorney's advice through, for example, a civil defendant's pleading of an advice-of-counsel defense or a criminal defendant's appeal on grounds of inadequate legal representation. The doctrine is also invoked to waive a personal injury plaintiff's physician-patient privilege and to waive the psychiatrist-patient privilege of a criminal defendant pleading an insanity defense. These allegations have one thing in common: the pleading places at issue the subject matter of a privileged communication in such a way that the party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail.

Developments in the Law–Privileged Communications, Implied Waiver, 98 Harv. L. Rev. 1629, 1638 (1985); *see also U.S. Fire Insurance Co. v. Asbestospray, Inc.*, 182 F.3d 201, 212 (3d Cir. 1999) (party waives the privilege only when he or she "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue."); *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 (7th Cir. 1995). ("[T]he attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation.").

Similarly, in the habeas context, courts have found implied waiver of these privileges when the petitioner "injects into [the] litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct." *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001). The implied waiver in habeas proceedings has typically been the result of a petitioner's assertion of his own counsel's ineffectiveness. *See id.* ("By alleging that his attorneys provided ineffective assistance of counsel in their choice of a defense strategy, [the petitioner] put at issue–and thereby waived–any privilege that might apply to the contents of his conversations with those attorneys to the extent those conversations bore on his attorneys' strategic choices."); *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003); *see also Tasby v. United States*, 504

F.3d 332, 336 (8th Cir. 1974) ("When a client calls into public question the competence of his attorney, the privilege is waived.").

Implied waivers are consistently construed narrowly. Courts "must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Bittaker*, 331 F.3d at 720 (habeas proceeding). "A broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote." *Id.* at 722. In another recent case from the Northern District, the Court applied implied waiver, but rejected an attempt by the warden to unnecessarily pierce the attorney-client privilege. *See Mason v. Mitchell*, 293 F. Supp. 2d 819, 823-24 (N.D. Ohio 2003). In *Mason*, the district court found that the petitioner implicitly waived the attorney-client privilege by putting his attorney's performance at issue, but was careful to note that "the waiver in habeas cases should be limited to the extent necessary to litigate a petitioners's ineffective assistance of counsel claims." *Id.* (citing *Bittaker*, 331 F.3d at 722). As such, the *Mason* court rejected the warden's request "to question the Petitioner about what he told his trial counsel regarding his involvement in the crime." *Id.* Also in *Mason*, while the District Court found the petitioner had implicitly waived the work product privilege regarding a psychiatric examination, that waiver did not extend to the privilege surrounding any inculpatory statements the Petitioner may have made to the psychiatrist. *Id.* at 825.

To be sure, litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. "[T]he attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Blizerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). But, while the sword stays sheathed, the privilege stands.

In this case, the District Court applies implied waiver in a completely new context. Rather than finding that Lott had put his attorney's performance or strategic decisions at issue and determining that he took the affirmative action to waive the privilege, the court finds waiver in Lott's assertion that the police invented the confession and in his assertion that he is innocent. Neither of Lott's assertions relate to what his attorney knew or did in this case. Instead, they are assertions about Lott's actions, i.e, whether he killed McGrath and whether he confessed to the killing to the police. We have not been able to discover a single case where a court has found that implied waiver applied in a similar fashion.

Likewise, in her response to Lott's petition for mandamus, the District Court cites no authority for her implied waiver ruling. In accounting for her order, she writes: "A habeas court may imply a waiver of privilege to the extent necessary for the State to defend the claims a habeas petitioner raises." This broad statement does not take into account necessary distinctions. The standard for implied waiver is not lower in habeas cases than it is in any other type of case. The privilege remains the client's, and the client must take some affirmative step to waive it. While raising certain claims in habeas proceedings might require petitioners to make a limited waiver of the privilege, implied waiver is limited to situations where the petitioner has made the confidential relationship the subject of a constitutional inquiry. Importantly, the waiver is implied from the nature of the claim, not from the nature of the proceeding.

The court's ruling on implied waiver was not based in any way on Lott's injection of his communications with his attorney into the proceedings All agree that Lott has put neither the performance of his attorney nor the content of their confidential communications before the court. Instead, the court suggests that the assertion of actual innocence itself amounts to an implied waiver of the attorney-client privilege. In essence, the District Court ruled that the attorney-client privilege is simply not applicable in this peculiar, little area of the law where a habeas petitioner asserts his actual innocence of the crime for which he was convicted.

In his dissenting opinion from this Court's order issuing a stay of discovery, Chief Judge Boggs indicates that the District Court might find support in the Supreme Court's opinion in *Schlup v. Delo*, 513 U.S. 298 (1995). *Schlup* does not involve, mention or rule on any privilege. In *Schlup*, an opinion that preceded Congress's enactment of the Anti-terrorism and Effective Death Penalty Act (AEDPA), the Court ruled that, in order to bring an otherwise barred claim, a habeas petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 513 U.S. at 327 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him" in light of all of the evidence. *Id.*at 327. Pointing out that this standard was directed toward "actual innocence," the Supreme Court wrote:

> In assessing the adequacy of petitioner's showing [of actual innocence], the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on "actual innocence" allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial.

513 U.S. at 328. The *Schlup* Court recognizes that in evaluating claims of innocence, habeas courts should consider "a broader array of evidence" than that available at trial.

To be certain, the *Schlup* Court indicates that the rules of admissibility do not limit the evidence that can be considered by a court evaluating a claim of actual innocence. Confidential statements made to attorneys are generally not admitted into evidence, but that is not because those statements are "inadmissible" in the normal sense. It is because those statements are protected by the attorney-client privilege, and that privilege enables the holder of that privilege to bar disclosure of otherwise admissible, confidential communications. If Lott made statements to his attorney concerning his guilt or innocence, those statements are unquestionably relevant to the determination of whether or not he is innocent. Moreover, his statements to his attorney if not privileged are admissible against him and would have been admissible against him in his original trial. No rule of evidence forbids the admission of statements by a criminal defendant made voluntarily to an attorney. If the privilege had been intentionally waived, the statements could certainly have been admitted.

By freeing district courts of the strictures of the rules of admissibility, the *Schlup* Court makes no suggestion that courts are likewise unbound by the rules of privilege. It can hardly be said that the Court would take such a large leap silently. The distinction between admissibility and privilege is no stranger to the Supreme Court or any other. Suspending the rules of admissibility while preserving the rules of privilege is not an unusual event. The Federal Rules of Evidence direct courts to do just that in almost every single judicial proceeding: "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court . . . . In making its determination, it is not bound by the rules of evidence *except those with respect to privileges.*" Fed. R. Evid. 104(a) (emphasis added); *see also* Fed. R. Evid 1101(d); *Bourjaily v. United States*, 483 U.S. 171, 177-78 (1987). Bearing this distinction in mind, it becomes clear that *Schlup* does not alter the rules of privilege.

The policies underlying privilege counsel strongly against expanding the scope of implied waiver. It is important to cabin the implied waiver of privileges to instances where the holder of the privilege has taken some affirmative step to place the content of the confidential communication into the litigation. The District Court's order would require that the privilege yield to reveal whether Lott ever made any statement inconsistent with that of an innocent man. Permitting this order to stand would place in jeopardy not only the attorney-client privilege, but also other important privileges such as the privilege between husband and wife, the privilege between patient and psychiatrist, or even the privilege between the penitent and their clergy. Since there is no linkage

between the implied waiver ruling and the nature of the privileged relationship, there would be no logical reason to limit the ruling solely to the attorney-client relationship. A petitioner's discussions with his wife, his psychiatrist, or his priest would similarly be fair game when a petitioner asserts innocence. Demanding that a person waive any of these privileges in order to assert that he is innocent of a crime is inconsistent with society's historical insistence that these confidential relationships deserve protection.

It should also be noted that the contention of a habeas petitioner that he is innocent is not all that different from a criminal defendant's assertion that he is not guilty of a crime. If the attorney-client privilege should fail due to the assertion of innocence by a man who has confessed to his attorney, it is difficult to conceive why the privilege determination would be different for a criminal defendant who pleads not guilty. Breaking down the privilege in this case where the content or consequence of the confidential communications is not at issue would undermine the privilege at other stages of the proceedings where the party asserts innocence as a defense. The privilege would also be waived at trial after a plea of not guilty. The focus on actual innocence "does not modify the essential meaning of 'innocence.'" *Schlup*, 513 U.S. at 328 (noting that it is firmly established that "the line between innocence and guilt is drawn with reference to a reasonable doubt"). The fact that the habeas petitioner is proceeding in civil rather than criminal court and now bears the burden of proof is largely insignificant to the rules of privilege. *Swidler & Berlin v. United States*, 524 U.S. 399, 408-09 (1998) ("[T]here is no case authority for the proposition that the privilege applies differently in criminal and civil cases."). Our dissenting colleague apparently does not see that this unity of civil and criminal law in respect to the privilege is a significant inconsistency in his argument in favor of piecemeal erosion of the privilege.

There is no way to affirm the District Court's ruling without abandoning centuries of jurisprudence concerning the scope of the attorney-client privilege and endangering the full and frank communication between clients and attorneys.

We therefore GRANT mandamus relief and SET ASIDE those portions of the District Court's order which hold that Lott's assertion of actual innocence effects an implied waiver of the attorney-client privilege and those portions of the order directing discovery in accordance with that holding. The case is REMANDED to the District Court with instructions to VACATE the order insofar as it is inconsistent with this opinion.

---

**DISSENT**

---

BOGGS, Chief Judge, dissenting. By concluding both that the loss of confidentiality is itself sufficient to warrant mandamus relief and that Lott's claim of actual innocence does not impliedly waive his attorney-client privilege, today's decision upsets this court's mandamus jurisprudence and elevates the privilege above trial protections guaranteed by the Constitution or other rules of evidence. It does so, I believe, in disregard of the Supreme Court's decision in *Schlup v. Delo*, 513 U.S. 298 (1995). I cannot agree with the course the court now charts, which is yet another step in transforming the extraordinary instance of a claim of actual innocence into an everyday litigation tactic, and I therefore respectfully dissent.

Lott is before this court on a petition for mandamus relief, which is "a drastic remedy, to be invoked only in extraordinary situations where the petitioner can show a clear and indisputable right to the relief sought." *In re Parker*, 49 F.3d 204, 206 (6th Cir. 1995). In determining whether petitioner is entitled to this remedy, our court evaluates his claim according to a five-part test. *In re Chimenti*, 79 F.3d 534, 540 (6th Cir. 1996). I disagree with the court's evaluation of Lott's petition as to two of these factors. My main point of departure with the court concerns the third factor: whether the district court committed any error at all, let alone a clear error. Furthermore, the court also incorrectly evaluates whether Lott will suffer any injury that could not be remedied on appeal, which is the second factor.

**I**

The novel issue in this case is whether a petitioner who asserts his actual innocence impliedly waives the attorney-client privilege he holds as to his trial counsel. I would conclude that he does based on the extraordinary nature of the actual innocence inquiry under *Schlup*, 513 U.S. 298.[1] I would accordingly deny Lott's mandamus petition.

To be clear, the sole reason that Lott should not enjoy the attorney-client privilege in his second pursuit of habeas relief is that he presents a claim of actual innocence, invoking *Schlup v. Delo*, 513 U.S. 298. No one doubts that habeas petitioners generally enjoy attorney-client privilege. Fed. R. Evid. 1101(c). Nor has the district court foisted *Schlup*'s demanding standard onto petitioner; Lott himself presents *Schlup* as a foundational case for his claim in his second petition. He asserted actual innocence in his first habeas petition as well. *In re Lott*, 366 F.3d 431, 435 (6th Cir. 2004) (Boggs, C.J., dissenting).

---

[1]While I conclude the district court's conclusion is manifestly correct, such firmness in belief is not necessary to deny the writ of mandamus. Between the district court being clearly correct, as I believe, and it clearly erring, as the court believes, lies a quite extensive gray area. If this issue were to fall into that area, I believe the mandamus petition would have to be denied. While the question of whether the district court is clearly erroneous as a matter of law is just one factor out of the five we balance, *Chimenti*, 79 F.3d at 540, the Supreme Court has put significantly greater emphasis on the issue. *See Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661 (1978) ("Whereas a simple showing of error may suffice to obtain a reversal on direct appeal, to issue a writ of mandamus under such circumstances 'would undermine the settled limitations upon the power of an appellate court to review interlocutory orders.'") (quoting *Will v. United States*, 389 U.S. 90, 98 n. 6 (1967)); *see also Parker*, 49 F.3d at 206 (granting relief only when petitioner demonstrates "a clear and indisputable right to the relief sought").

**A**

As other courts have observed, "'[t]he doctrine of implied waiver allocates control of the privilege between the judicial system and the party holding the privilege.'" *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (en banc) (quoting *Developments in the Law–Privileged Communications*, 98 Harv. L. Rev. 1450, 1630 (1985)). Thus, "the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). The typical example of such situations, in the habeas context, is when a petitioner asserts that his counsel was ineffective. *See*, *e.g.*, *Bittaker*, 331 F.3d at 716 ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer.")

But there is no reason to believe that the typical circumstance is also the only circumstance in which a petitioner will impliedly waive privilege. Lott presents a claim of actual innocence under *Schlup*, which is "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). The district court is required to determine if Lott in fact committed the murder. *See Sawyer v. Whitley*, 505 U.S. 333, 340 (1992) ("A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime."). As *Schlup* and *Bousley* make clear, the "actual innocence" inquiry is a fundamentally different one than that typical of legal proceedings. While the inquiry still requires reference to reasonable doubt, *Schlup*, 513 U.S. at 328, a claim of actual innocence greatly expands the scope of relevant evidence. The Court explained the standard as follows:

> In assessing the adequacy of petitioner's showing, therefore, *the district court is not bound by the rules of admissibility that would govern at trial*. Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of *relevant evidence that was either excluded or unavailable at trial*. Indeed, . . . we believe that Judge Friendly's description of the inquiry is appropriate: The habeas court must make its determination concerning the petitioner's innocence '*in light of all the evidence*, *including that alleged to have been illegally admitted* (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'"

*Id.* at 327-28 (emphases added) (quoting Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970)). When adjudicating a claim of actual innocence, both the court and the parties are "through the looking glass." They engage in a fundamentally new inquiry where previous limitations on evidence do not apply.

Fairness thus requires that a petitioner who asserts that he is innocent "'in light of all the evidence'" have his claim evaluated "'in light of all the evidence.'" *Id.* at 328 (quoting Friendly, 38 U. Chi. L. Rev. at 160). Therefore, I would conclude that Lott's implied waiver of the attorney-client privilege is "essential to achieving a just resolution of the case." *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981). *Schlup* directly authorizes courts to inquire into "relevant evidence . . . unavailable at trial." 513 U.S. at 328. The conversations and documents protected by Lott's attorney-client privilege fall neatly into that category. Some of those documents are certainly relevant evidence to his actual innocence,[2] and were properly neither admitted nor made available at trial because of Lott's privilege. But Justice Stevens's opinion could hardly be

---

[2]The district court will screen the documents for relevance to Lott's actual innocence or *Brady* claims via *in camera* inspection before turning them over to respondent. *See* Pet'r App. 52-53 (district court discovery order).

more clear that neither the admissibility nor availability of privileged materials is relevant in proceedings under *Schlup*.

The court attempts to evade this passage by distinguishing the protections afforded by privilege and the protections afforded by other rules of evidence. Of course, it is true that, unlike most rules of evidence, the rules of privilege insulate communications from both discovery and admission in court. *See* Fed. R. Civ. P. 26(b)(1) (excluding from discovery privileged communications). However, the court's distinction, while correctly drawn, is between one kind of evidence and other kinds of evidence. *See* Fed. R. Evid. 501 (federal rule concerning privileges). *Schlup*, on the other hand, is concerned with any "relevant evidence," 513 U.S. at 327, and makes no reference to excluding one form or another based on what rule protects it, *id.* at 327-28. In other words, given *Schlup*'s guidance, the court draws a distinction without a difference.

The court continues by arguing that the Supreme Court is aware of the difference between the rules of admissibility and those concerning privilege. It therefore notes that "[s]uspending the rules of admissibility while preserving the rules of privilege is not an unusual event." Slip Op. at 8. Agreed. But the Supreme Court's familiarity with the distinction today's opinion now draws speaks volumes for the Court's decision not to draw the distinction itself. While *Schlup*'s discussion of relevant evidence is short, at no point does Justice Stevens exclude any evidence from the consideration. 513 U.S. at 327-28. Indeed, it refers to considering "all of the evidence." *Id.* at 328. Moreover, the passage directs courts to suspend the rules of admissibility. *Id.* at 327. Though privilege protects more than admissibility, it also prevents admitting privileged information and, thus, could be described as a rule of admissibility. While the court finds it difficult to believe that such a large leap would be taken silently, Slip Op. at 8, I find it harder to justify inferring from what it considers silence a distinction found nowhere in the Supreme Court's reasoning.

A broader reading of *Schlup* confirms that the investigation into all evidence should include evidence otherwise protected by privilege. Actual innocence serves as an exception for otherwise procedurally defaulted claims on the basis that the petitioner is "entirely innocent." *Schlup*, 513 U.S. at 325. The petitioner is therefore arguing it is a "fundamental miscarriage of justice" for him to remain incarcerated. *See id.* at 324-25. Actual innocence claims are meant for the "truly deserving," and thus also the "extraordinary case." *Id.* at 321. For a petitioner to show he is entirely innocent, and that he is truly deserving of extraordinary relief, one would think he must be willing to test his innocence against literally all the evidence, including whatever is protected by privilege.

Though this conclusion may seem unduly harsh, one must remember what a petitioner waives by placing his actual innocence at issue. The attorney-client privilege, even compared to other privileges, has an exalted place in our jurisprudence. *See Philip Morris*, 314 F.3d at 618 ("The attorney-client privilege rests at the center of our adversary system . . . ."). But claims of actual innocence require petitioners to surrender much of the normal protections they would enjoy at trial that are guaranteed by the Constitution, not to mention other more commonplace protections afforded by evidentiary rules. Given the *Schlup* Court's approval of Judge Friendly's article concerning habeas relief based on claims of innocence, 513 U.S. at 321-22 & 328, it is beyond peradventure that evidence seized in violation of the Fourth Amendment could be used in determining if petitioner was actually innocent. Friendly, 38 U. Chi. L. Rev. at 160. This court has already decided that a statement given in violation of Lott's Sixth Amendment rights can be used against him in determining his actual innocence. *Lott v. Coyle*, 261 F.3d 594, 621 (6th Cir. 2001). I see no reason why petitioner's rights under the Self-Incrimination Clause of the Fifth Amendment would fare any better. The Confrontation Clause of the Sixth Amendment primarily addresses the introduction of out-of-court statements at trial. *Crawford v. Washington*, 541 U.S. 36, 50-51 (2004).

Thus, the admissibility alone of certain evidence raises concerns of constitutional magnitude.[3] There is no room, however, in an actual-innocence determination under *Schlup* for the exclusion of evidence under the Confrontation Clause. *Cf. Doe v. Menefee*, 391 F.3d 147 (2d Cir. 2004) (considering questionable hearsay testimony in actual innocence inquiry because *Schlup* demands review based on all the evidence). If trial protections guaranteed by the Fourth, Fifth, and Sixth Amendments of the Constitution are waived by habeas petitioners making claims of actual innocence, one must pause to wonder why the attorney-client privilege is not, as well. It may not be hyperbole to suggest, as the court does, that the attorney-client privilege is foundational to the adversary system, Slip Op. at 4, but the Bill of Rights is no less foundational to our courts or society.

Thus, the fact that the attorney-client privilege already has a doctrine of implied waiver weakens, rather than strengthens, the court's position. There is no doctrine of implied waiver of rights guaranteed by the Constitution and yet this court has seen fit to waive, in this very hearing, a protection created by Lott's Sixth Amendment rights. The rationales expressed in most implied-waiver cases speak of doing fairness to the opposing party. *See Bittaker*, 331 F.3d at 720. Doing fairness to the state in an actual-innocence context may require that a petitioner impliedly waives his privilege. In this case, the parties are reexamining a crime where the only witness to the crime, other than the perpetrator, passed away almost twenty years ago. Finding witnesses and any remaining relevant evidence concerning this crime will be difficult. *See Bousley*, 523 U.S. at 631 (Scalia, J, dissenting) (discussing difficulties facing federal investigators for crime eight years in the past where the defendant pleaded guilty). However, especially in a case like this, where there has always been some possibility that the petitioner confessed to the crime, the state should in fairness be allowed to evaluate the records of trial counsel.

## B

Contrary to the reasoning of the court, I further believe that the principles surrounding attorney-client privilege favor extending implied waiver to the assertion of actual innocence. The district court found only that petitioner had waived attorney-client privilege as to his trial counsel in asserting his actual innocence under *Schlup*. While my reasoning would likely lead me to conclude that a petitioner asserting actual innocence would also waive other privileges, that fact does not give me pause. It is a necessarily result of an assertion that one is actually innocent and a victim of a fundamental miscarriage of justice. Moreover, the attorney-client privilege is more critical to our system of justice than other privileges. *See Jaffee v. Redmond*, 518 U.S. 1, 11 (1996) (establishing psychotherapist-patient privilege on basis of public good in improving mental health). In a context where illegally seized evidence, confessions extracted without *Miranda* warnings, and out-of-court testimonial statements can be employed, maintaining the psychotherapist-patient privilege, just to name one, would be odd indeed.

However, I cannot state strongly enough that the district court's judgment does no violence to claims of attorney-client privilege in other contexts. I must admit to being baffled by the court's suggestion that the district court's judgment or the opinions expressed in this dissent will lead to an unraveling of the attorney-client privilege. *See* Slip Op. at 9. Any fair reading of the Court's actual-innocence jurisprudence makes clear the error in this assertion. While the determination is still made with reference to innocence, it is "factual innocence" that the court considers based on all relevant evidence. *Bousley*, 514 U.S. at 623; *Schlup*, 513 U.S. at 327-28. When both the court and the parties step "through the looking glass" to consider a petitioner's actual innocence, they engage in an inquiry of a fundamentally different kind. A claim of actual innocence thus places unique demands on the attorney-client privilege, based on values that do not transfer to other areas of law.

---

[3]This was even more pronounced under the Confrontation Clause analysis of *Ohio v. Roberts*, 448 U.S. 56 (1980), under which hearsay statements could be admitted if they fell within a "firmly rooted hearsay exception." *Id.* at 66.

Despite the attorney-client privilege's pedigree, it is to be narrowly construed because, like all other privileges, it is "in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). It "'applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 293 (6th Cir. 2002) (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986)). Applying waiver only when a petitioner raises a claim of actual innocence does little harm to the privilege's purpose of promoting open communication between attorney and client. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (giving purposes served by attorney-client privilege). It frankly blinks at reality to believe that a criminal defendant will be less candid with his attorney because of his possible assertion of a claim that would likely only be raised after conviction, a full course of appeals in the state courts, post-conviction review in the state courts, and federal habeas review. The purposes of the privilege are not harmed by this ruling.**⁴**

In addition, even if the values animating the privilege were incrementally diminished by this reasoning, Rule 501 of the Federal Rules of Evidence authorizes federal courts to determine the scope of privilege "in the light of reason and experience." Courts have thus been willing to limit the privilege's applicability when policy considerations counsel otherwise. *See In re Witness Before Special Grand Jury 2000-2*, 288 F.3d 289, 292-94 (7th Cir. 2002); *In re Lindsey*, 158 F.3d 1263, 1275-78 (D.C. Cir. 1998); *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 920-21 (8th Cir. 1997) (all rejecting a governmental attorney-client privilege in grand-jury proceedings); *see also Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998) (noting that governmental assertion of the attorney-client privilege conflicts with "the strong public interest in open and honest government"). *But see In re Grand Jury Investigation*, 399 F.3d 527, 532 (2d Cir. 2005) (allowing governmental assertion of privilege in grand jury context to foster open communication). The actual-innocence claim attempts to strike a balance between the interests in finality and comity, on the one hand, and individualized justice on the other. *Schlup*, 513 U.S. at 321. The privilege already limits the truth-gathering function of the court and, thus to some extent, also individual justice. *Cf. In re Grand Jury Investigation*, 399 F.3d at 532 ("The idea that a robust attorney-client privilege will in fact 'promote broader public interests' does not mean that application of the privilege will render justice in every single case."). Now, under the court's decision today, the privilege will also be used to oppose finality and comity by prolonging the fair disposition of such claims and encouraging their proliferation.

## II

The second factor for determining if a petitioner is entitled to mandamus relief is whether the petitioner "will be damaged or prejudiced in a way not correctable on appeal." *Chimenti*, 79 F.3d at 540. The court's conclusion that Lott will be irreparably harmed by his loss of confidentiality he enjoyed in communications with his trial counsel is a departure from both this court's and our sister courts' examinations of the issue and will weaken the flexibility central to our mandamus jurisprudence. *In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997); *Chimenti*, 79 F.3d at 539.

Petitioner's case differs substantially from the complex commercial suits in which discovery orders have been deemed grounds for mandamus review. *See*, *e.g.*, *United States v. Philip Morris*, 314 F.3d 612, 614 (D.C. Cir. 2003) (granting interlocutory appeal under collateral order doctrine in federal RICO prosecution); *Perrigo*, 128 F.3d at 432 (granting mandamus review in stockholder

---

**⁴**The attorney-client privilege's role in insuring effective advocacy, *see Philip Morris*, 314 F.3d at 618, may be good reason to hold that a petitioner does not impliedly waive the privilege as to communications with his *current* counsel when he asserts his actual innocence. That question, however, is not before us as the district court's ruling is specifically limited to Lott's trial counsel.

derivative suit), *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 160-62 (2d Cir. 1992) (same result in case concerning asbestos installation). As I observed when the court granted Lott a stay pending this decision, "[t]his difference matters, not because the harm facing Lott is any less (quite the opposite), but because it impacts this court's ability to remedy that harm on appeal." *In re Lott*, No. 05-3532, 2005 WL 1515367, at \*7 (6th Cir. June 22, 2005) (Boggs, C.J., dissenting). In the conventional instance, encroachments on the attorney-client privilege will make effective appellate review and remedy impossible. The wrongfully gained discovery will produce "fruit of the poisoned tree" problems. *Chase Manhattan Bank*, 964 F.2d at 165. Courts would find it impossible to separate the "poisoned" evidence and theories from those not compromised by wrongful disclosure. *See Philip Morris*, 315 F.3d at 619 ("It would be impossible for a court to sort out and redress the harm caused by the incorrect disclosure."). As one of our sister circuits has accurately, if colorfully, put it, "there is no way to unscramble the egg scrambled by disclosure." *In re Ford Motor Co.*, 110 F.3d 954, 963 (3d Cir. 1997).

That concern is not present in this case, where nearly twenty years of litigation in state and federal courts have crystallized the points of contention between the parties. We already know the evidence that the state seeks to extract from Lott's trial attorneys: that Lott admitted to them either that he committed the murder or that he confessed to police. They seek to extract this evidence for one reason only: to convince the district court that Lott is not actually innocent of the crime for which he was convicted. Were this case then to reach us on appeal, and Lott were to press the claim on which the court now grants relief, our position would be a familiar one to any appellate court. Were we to agree with Lott's position, we would exclude the evidence and remand to the district court, following the same procedure we do in any evidentiary dispute. That is, we could remedy any error, if indeed there were error, on direct appeal.

Instead of disagreeing with this analysis, the court focuses instead on a different harm, the inherent harm of losing confidentiality. *See* Slip Op. at 5 ("The damage to the attorney-client relationship will have already been done by the disclosure itself."). No case from our sister circuits, however, focuses on that harm divorced from its practical consequences to the litigants. In *Chase Manhattan Bank*, cited by the court, *ibid.*, the Second Circuit emphasized that disclosure of confidential documents to opposing counsel, even if not used at trial, would still cause practical harms to the party asserting privilege. *Chase Manhattan Bank*, 964 F.3d at 165. Our sister circuit observed that even temporary disclosure would allow "evidentiary leads or give insights regarding various claims and defenses" to which opposing counsel would not otherwise be entitled. *Ibid.*; *see also Ford Motor Co.*, 110 F.3d at 963 (noting similarly harmful effects). Thus, when both the Second and Third Circuits have noted that discovery of privileged materials "'will not suffice to ensure free and full communication by clients who do not rate highly a privilege that is operative only at the time of trial,'" *ibid.* (quoting *Chase Manhattan Bank*, 964 F.3d at 165), our sister circuits recognized that clients would be concerned with the practical consequences of that disclosure, i.e. opening a Pandora's box of wrongly gained evidence and legal theories. That risk is not presented by the facts of this case.

More important, however, is the court's marked departure from our own court's mandamus jurisprudence. In this court, mandamus relief is "an extraordinary remedy, only infrequently utilized." *Perrigo*, 128 F.3d at 435. While we have granted mandamus relief to protect a party's attorney-client privilege, we have done so based on the circumstances of the case with emphasis on the flexibility our case law affords. *See id.* at 437 (emphasizing the circumstances surrounding the claim). We recognized that discovery-based violations of the privilege "*may* bring about irreparable harm." *Ibid.* (emphasis added). Until today's opinion, however, we have never held that a discovery-based violation automatically *will* bring about irreparable harm. But that is the inevitable conclusion of the court's reasoning, as there is no violation of privilege that will not result in some loss of confidentiality. Nor can today's opinion be limited to the context of the attorney-client privilege because any loss of privilege will result in a diminution in confidentiality. More

importantly, a party can assert that it will be harmed in a way not revocable on appeal without any concern for the context in which the harm is asserted. It seems that any party seeking to shield communications protected by any privilege can draw on the mandamus jurisdiction of this court, so long as some of the other conditions are met. *See Parker*, 49 F.3d at 207 (noting factors are to be balanced and the absence of one factor does not doom petition for relief).

Today's departure from our previous mandamus jurisprudence will have deleterious effects. As to this factor in the mandamus balancing, this court is now without any flexibility in addressing whether a litigant will be harmed.[5] Our court will inevitably see more petitions for writs of mandamus, but will have fewer tools with which to distinguish the extraordinary from the mundane. With the rise in mandamus petitions will come accompanying delays in the orderly administration of justice, which our mandamus jurisdiction is supposed to further, not weaken. *Perrigo*, 128 F.3d at 435 (citing *EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1061 (6th Cir. 1982)). All this will be done in the service of privileges, which, despite their historical roots, are still a set of doctrines that "contravene the fundamental principle that 'the public . . . has a right to every man's evidence.'" *Trammel v. United States*, 445 U.S. 40, 50 (1980) (alteration in original) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)). Therefore, I would conclude that the loss of confidentiality, standing alone, is not sufficient to justify issuance of a writ of mandamus.

### III

For these reasons, I would conclude that petitioner, by asserting his actual innocence, has impliedly waived the attorney-client privilege as to his trial counsel. While I believe a fair reading of *Schlup* requires this conclusion, the conclusion is further confirmed by the policies surrounding claims of actual innocence and consideration of the other evidence that will be admitted. Furthermore, I cannot agree with the court's reasoning in finding that Lott will endure any irreparable harm if we were to consider his claim only following a final judgment by the district court. I therefore respectfully dissent.

---

[5]Perhaps the court wishes to adopt the positions of two of our sister circuits and allow immediate appeals under the collateral order doctrine, *see* Slip Op. at 2 n.2, but that is not and has never been the law in this circuit. *See FDIC v. Ernst & Whinney*, 921 F.2d 83, 85 (6th Cir. 1990) (denying jurisdiction under the collateral doctrine in case involving governmental privileges).